[No. B056296. Second Dist., Div. Four. Feb. 1, 1993.]

WENDY DAVARIS, Plaintiff and Appellant, v.
VASA CUBALESKI, Defendant and Respondent.

**COUNSEL**

Grossman, Grant, Cowan & Cramer and Michael I. Cowan for Plaintiff and Appellant.

Joseph Posner as Amicus Curiae on behalf of Plaintiff and Appellant.

Marshall, Carr & Perrigue and Christopher A. Carr for Defendant and Respondent.

## OPINION

**WOODS (A. M.), P. J.**—Wendy Davaris (appellant) appeals the dismissal of her wrongful termination action against Vasa Cubaleski (respondent) entered after the trial court sustained a demurrer without leave to amend.[1]

We accept as true the allegations of appellant's complaint. (*Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 747 [7 Cal.Rptr.2d 808, 828 P.2d 1195, A.L.R.4th 2575].)

Appellant went to work for respondent, the owner of Continental Culture Specialists, Inc., in 1981 as a bookkeepr at an annual salary of $19,125 a year. By 1988, appellant had risen through the ranks to the position of office manager, was earning over $66,000 a year and participating in the company's profit-sharing plan. During her employment, appellant was repeatedly told by respondent that "Continental is your future," and "if Continental makes money, so will you," leading appellant to believe that her employment was of an indefinite duration and would not be terminated except for cause.

In September 1987, appellant informed respondent that she needed to have a hysterectomy and would require six months to recuperate. At respondent's request, she postponed the operation for approximately six months. When she again approached him in March 1988, he accused her of "ruining the company . . . ." When she reminded him that she had postponed the operation at his request and told him that in her opinion she was entitled to the time off, he responded that she had "no right to an opinion . . . ."

Thereafter, respondent "began a course of conduct designed to harass and humiliate [appellant], and designed to induce her to resign . . . ." Before she went in for surgery, respondent hired a replacement for appellant and informed her of that fact. After her surgery, he threatened that she might not be allowed back to work, though eventually she was.

Respondent also began to make disparaging remarks about appellant to other employees, telling one of them that appellant was a "Jew dictator." He said this, knowing that appellant was sensitive to anti-Semitic remarks, and that it would get back to her. Respondent also refused to speak to appellant.

Respondent falsely told appellant she was behind in her work. He also told other employees and an outside accounting firm that appellant was stealing

---

[1]Also named in her complaint is Continental Culture Specialists, Inc. Continental is not a party to this appeal.

money from the company and conspiring with an outside contractor to steal money. Both accusations were false. He also told other employees that appellant had worked out a deal with the company's health insurer by which she received her health insurance benefits to the detriment of other employees. This accusation was also false.

Appellant was terminated on August 3, 1989. She was asked by respondent to sign a resignation letter. The letter included a clause implicitly conditioning her severance pay upon signing. She refused and received no severance pay.

Even after appellant was terminated, respondent continued his campaign of harassment against her. In September 1989, he told a number of employees that appellant and two other employees had stolen $800,000, preventing respondent from paying employee bonuses. Respondent had made the same allegation about appellant before she was terminated.

On January 4, 1990, appellant filed her complaint against respondent and Continental. She alleged five causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, wrongful termination in violation of public policy, wrongful termination in breach of contract, and defamation.

Respondent demurred to the complaint, arguing that workers' compensation provided appellant's exclusive remedy. The trial court sustained the demurrer without leave to amend on the first, second, third and fifth causes of action because "all of the conduct alleged by plaintiff in support of her causes of action for Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress; Wrongful Termination Public Policy and Defamation arose in a setting of the work place and hence was within the 'Normal part of the employment relationship' as defined by the recent Supreme Court decision of *Cole* v. *Fair Oaks Fire Protection District*, 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743], (1987)." An order of dismissal was entered on December 10, 1990, and this appeal ensued. We affirm in part and reverse in part.

I

The question of whether or not an employee can maintain causes of action for infliction of emotional distress despite the exclusivity provision of the Workers' Compensation Act was addressed by the recent Supreme Court decision of *Livitsanos* v. *Superior Court, supra,* 2 Cal.4th 744, which involved another employee of the same company from which appellant was

terminated. Like appellant, the plaintiff in *Livitsantos* alleged causes of action for intentional and negligent infliction of emotional distress in his action against respondent and Continental and a demurrer was sustained as to these causes of action without leave to amend.

The plaintiff in *Livitsanos*, like appellant here, had relied on *Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833 [147 Cal.Rptr. 447], in support of his causes of action for emotional distress. That case "held that a cause of action for intentional infliction of emotional distress is outside the scope of the workers' compensation scheme where the injury is purely 'emotional,' and no 'physical' disability is alleged." (*Livitsanos* v. *Superior Court, supra,* 2 Cal.4th at p. 750.) *Renteria* had survived the Supreme Court's earlier decision in *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743], in which the court held that a firefighter was precluded by the exclusivity provision of the workers' compensation statute from maintaining an action for intentional infliction of emotional distress against his employer where the conduct complained of caused total, permanent mental and physical disability.

*Cole* distinguished *Renteria* because in the latter case there had been no allegation of physical injury compensable under workers' compensation. (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 156.) In *Livitsanos,* the Supreme Court revisited *Renteria* and overruled it. "[T]he *Renteria* court plainly erred in suggesting that emotional injury which results in an industrial disability is not compensable under the Workers' Compensation Act. So long as the basic conditions of compensation are otherwise satisfied [citation], and the employer's conduct neither contravenes fundamental public policy [citation] nor exceeds the risks inherent in the employment relationship [citation], an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." (*Livitsanos* v. *Superior Court, supra,* 2 Cal.4th at p. 754.)

Accordingly, because *Livitsanos* is indistinguishable from the instant case, we conclude that the demurrer to appellant's causes of action for emotional distress was properly sustained.

## II

Appellant also argues that the court erred when it sustained the demurrer to her cause of action of wrongful termination in violation of public policy.

"One who has been wrongfully terminated from employment may seek tort damages based on a claim that he or she was terminated in violation

of a fundamental public policy. [Citations.]" (*Luck* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 27 [267 Cal.Rptr. 618]; *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) "Even where . . . a statutory touchstone has been asserted, we must still inquire whether the discharge is against public policy and affects a duty that inures to the benefit of the public at large rather than to a particular employer or employee." (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 669 [254 Cal.Rptr. 211, 765 P.2d 373].)

■■ In this case, appellant asserts that the public policy violated by her termination was "the public policy of this state to encourage proper medical care." She argues that respondent violated this public policy because his campaign of harassment against her and her subsequent termination "were a result of her taking leave from work to have a hysterectomy."

In support of her contention, she cites two sections of the Labor Code, sections 6401 and 6403, both of which require an employer to "do every other thing reasonably necessary to protect the life, safety, and health of employees." (Lab. Code, §§ 6401, 6403, subd. (c).) These statutes, however, do not support a public policy of encouraging proper medical care. Rather, they put an employer under a legal duty to maintain a safe and healthful workplace. (*Bonner* v. *Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d 1023, 1034 [275 Cal.Rptr. 337].)

Appellant's reliance on *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015], is misplaced. In *Hentzel*, the employee was fired because he was agitating for a smoke-free work environment. In reversing the dismissal of his action after demurrer, the appellate court held that under relevant Labor Code provisions an employee "is protected against discharge or discrimination for complaining in good faith about working conditions or practices which he reasonably believes to be unsafe . . . ." (*Id.* at p. 299.) That is not the case here.

■■■■ Appellant failed to allege a cognizable public policy which was violated by her termination, and the demurrer was properly sustained as to this cause of action.[2]

---

[2]The trial court's reason for sustaining the demurrer to this cause of action was that it was precluded by *Cole* v. *Fair Oaks Fire Protection Dist., supra*, 43 Cal.3d 148. This is, in fact, not the case. *Cole* did not discuss the wrongful termination for violation of public policy exception to the exclusivity provision of workers' compensation. In *Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at pages 668-669, the Supreme Court made clear the continuing viability of this exception. Nonetheless, for our purposes, we review the court's ruling, not the reasons given for it, and if the ruling is correct it will be affirmed even if it was reached by

## III

█ We come finally to appellant's cause of action for defamation. Here we agree that the trial court erred in sustaining the demurrer to this cause of action.

In *Livitsanos* v. *Superior Court, supra,* 2 Cal.4th at page 757, the Supreme Court declined to decide whether defamation claims arising out of the course and scope of employment are barred by the exclusivity provision of the Workers' Compensation Act. The court observed: "A number of courts have apparently determined that the gravamen of an action for libel or slander is damage to 'reputation', a 'proprietary' as distinct from a physical or mental injury, and therefore have concluded that defamation does not lie within the purview of the workers' compensation law. [Citations.]" (*Id.* at p. 757, fn. 9.)

The only California decision cited by the Supreme Court for this proposition is *Howland* v. *Balma* (1983) 143 Cal.App.3d 899 [192 Cal.Rptr. 286].

In *Howland,* the plaintiff, a deputy sheriff, brought a slander action against his supervisor who plaintiff alleged falsely accused him of using unnecessary force during an arrest. Prior to filing the complaint, plaintiff applied for workers' compensation benefits and signed a compromise and release to resolve the matter. The trial court granted summary judgment to the supervisor on the grounds that the settlement and release barred the slander action. The Court of Appeal reversed.

Reviewing the purpose of the Workers' Compensation Act, the court observed: "The right to benefits under the Act is the employee's exclusive remedy against the employer where the conditions of liability under the Act exist. [Citation.] The conditions of liability attach where the employee receives ' "a personal injury arising out of and in the course of his employment . . . ." ' [Citation.] The 'personal injuries' for which the Act provides a remedy includes 'physical and mental injuries suffered on account of employment.' [Citations.] Thus, the Act relates to medical and/or occupational injuries, i.e., those risks to which the fact of employment in the industry exposes the employee. [Citation.]" (*Howland* v. *Balma, supra,* 143 Cal.App.3d at p. 904.) The court went on to say: "The gist of an action for slander, however, is damage to reputation. [Citations.] The harm flowing therefrom is not a 'personal injury' (i.e., medical or physical injury to the body) or a risk of employment within the purview of the workers' compensation law. [Citations.] 'In fact, an injury to reputation affects a proprietary

a mistaken line of reasoning. (*United Pacific Ins. Co.* v. *Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 933 [266 Cal.Rptr. 231].)

interest and as such is not a personal injury at all, any concomitant physical or mental injury notwithstanding.' (*Battista* v. *Chrysler Corp.* [(Del.Super. 1982)] 454 A.2d [286, 289].)" (*Howland* v. *Balma, supra,* 143 Cal.App.3d at p. 904.)

*Howland* was cited with approval by the Supreme Court in *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1 [276 Cal.Rptr. 303, 801 P.2d 1054, A.L.R.4th 1720], where, in its discussion of the scope of the exclusive nature of the Workers' Compensation Act, the court noted: "Conversely, the exclusive remedy provisions apply *only* in cases of . . . industrial personal injury or death. (See, e.g., *Howland* v. *Balma* (1983) 143 Cal.App.3d 899 [192 Cal.Rptr. 286] [workers' compensation not exclusive remedy for defamation]. . . .)" (*Shoemaker* v. *Myers, supra,* 52 Cal.3d at p. 16; *Coca-Cola Bottling Co.* v. *Superior Court* (1991) 233 Cal.App.3d 1273, 1288-1290 [285 Cal.Rptr. 183] [to fall within exclusivity provision, the injury must be an injury to the person].)

We note, initially, that certain of the allegedly defamatory statements made by respondent (accusing appellant of stealing $800,000) were made after appellant was terminated and can, by no stretch, be deemed to have occurred in the course and scope of appellant's employment. Moreover, with regard to those allegedly defamatory statements made while appellant was still employed by Continental, we agree with *Howland* that the harm from them was not in the nature of personal injury for purposes of the Workers' Compensation Act.

The court below, in sustaining the demurrer to the defamation cause of action, relied on *Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, in which the Supreme Court held that claims by an employer of intentional misconduct were subsumed under the exclusivity provision of workers' compensation. The court "concluded that, when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Id.* at p. 160.)

Patently, however, defamatory statements which have no other purpose than to damage an employee's reputation are neither a "normal part of the employment relationship" nor a risk of employment within the exclusivity provision of the Workers' Compensation Act. (*Howland* v. *Balma, supra,* 143 Cal.App.3d at p. 905.)

Accordingly, we reverse the order of dismissal insofar as respondent's demurrer was sustained as to appellant's cause of action for defamation. The order is otherwise affirmed. Each side to bear its costs.

Epstein, J., and Taylor, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied April 15, 1993.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.