[No. B072215. Second Dist., Div. Six. July 21, 1993.]

DEBBRA J. ACCARDI, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
CITY OF SIMI VALLEY et al., Real Parties in Interest.

344

**COUNSEL**

Rehwald, Rameson & Lewis, William Rehwald and Sylvia J. Simmons for Petitioner.

No appearance for Respondent.

Beach, Procter & McCarthy, Thomas E. Beach and Sean D. Cowdrey for Real Parties in Interest.

---

## OPINION

**GILBERT, J.**—Sexual harassment does not necessarily involve sexual conduct. It need not have anything to do with lewd acts, double entendres or sexual advances. Sexual harassment may involve conduct, whether blatant or subtle, that discriminates against a person solely because of that person's sex.

In this writ proceeding, we hold that sexual harassment occurs when an employer creates a hostile environment for an employee because of that employee's sex. We also hold that a claim for sexual harassment is not time-barred when there are continuous acts of discrimination over a period of time provided that some of those acts fall within the limitations period. We further hold that a claim of emotional distress arising out of sexual harassment is not preempted by workers' compensation law.

Petitioner, Debbra J. Accardi, was at one time employed as a police officer with the City of Simi Valley. On October 11, 1991, she filed sexual discrimination complaints with the California Department of Fair Employment and Housing (DFEH). On October 17, 1991, Accardi obtained a "right to sue letter" from DFEH. On March 13, 1992, she filed a lawsuit against real parties, the City of Simi Valley, James Bartholomew, Richard Wright, Anthony Harper III, and Mark Layhew, and others. Her complaint alleges causes of action for sexual harassment in violation of Government Code section 12940 et seq., constructive discharge, intentional interference with business relationship, and intentional infliction of emotional distress.

Real parties demurred upon the ground that the causes of action for sexual harassment and intentional infliction of emotional distress are preempted by the exclusive provisions of workers' compensation laws. (Lab. Code, §§ 132a, 3601; *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 151 [233 Cal.Rptr. 308, 729 P.2d 743].) They also asserted that the cause of action for sexual harassment was barred by the statute of limitations. (Gov. Code, § 12960.) Respondent superior court sustained the demurrers with leave to amend.

On September 30, 1992, Accardi filed an amended complaint. Real parties demurred to the amended complaint upon grounds similar to their first demurrers.

The trial court sustained the demurrer without leave to amend as to the causes of action for sexual harassment and emotional distress. It held that Accardi did not state a cause of action for sexual harassment and emotional distress. The court also ruled that Labor Code section 132a preempted the cause of action for intentional infliction of emotional distress and held that the cause of action for sexual harassment was time-barred. The claim of constructive discharge was the only cause of action to survive the demurrers.

Accardi, lacking a remedy by way of an appeal, sought relief by way of a petition for extraordinary writ from this court. We have issued an alternative writ of mandate. (*Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1273-1274 [258 Cal.Rptr. 66].)

■ Because a demurrer admits all factual allegations contained in a complaint (*White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222]), this court assumes the truth of all well-pled allegations contained in the complaint. "[T]he question of plaintiffs' ability to prove these allegations, or the possible difficulty in making such proof, does not concern the reviewing court." (*Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 604 [262 Cal.Rptr. 842].)

Accardi alleges in her amended complaint that she was hired as an officer of the Police Department of the City of Simi Valley in November 1980. During her tenure, between November 1980 and July 1991, she claims to have been subjected to numerous and continuing episodes of discrimination and harassment because of her sex. The misconduct she specifies includes, among other things, spreading untrue rumors about her abilities, deliberately singling her out for unfavorable work assignments and work shifts, making unsubstantiated complaints about her performance, making statements that her baton was only useful to perform sex acts, stuffing her shotgun barrels with paper so that the weapon would explode if fired, spreading rumors that she had slept with superior officers in order to receive favorable assignments, and threatening to disrupt her wedding.

The amended complaint also alleges such events as: deliberately overburdening her with double work assignments; denying assistance when she requested it; deliberately circumventing established procedures when she was assigned to duty as a court officer in order to make her work more difficult; excluding her from group activities; mimicking and making fun of her before her peers in the unit; admitting to her that there were double standards and telling her she must live with them; allowing threats of bodily harm to be made to her in front of a room filled with officers; allowing derogatory and condescending remarks to be made about her, and women in general; and making sexual advances to her.

Accardi complains that her superiors ratified the actions of her fellow officers by: advising her to accept the double standard and not doing anything about the harassment; allowing the filing of false reports; assigning duties to her only because she was a woman; causing false and misleading medical reports to be filed alleging that petitioner was 100 percent fit notwithstanding a permanent Workers' Compensation Appeals Board declaration that she was 28¾ percent disabled; excluding her from work details to which all other partially disabled officers were assigned; ordering her to either declare herself 100 percent fit, or file for early retirement; and telling petitioner she would be eligible for early retirement only if she were 30 percent disabled.

Accardi alleges that each of the defendants was acting in concert as the representative, employee, or agent, of the other defendants.

## DISCUSSION

### *No preemption for discrimination claim*

Discrimination in employment is *not* a normal incident of employment. (*Jones* v. *Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794 [244 Cal.Rptr. 37].) A claim for damages under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) is not preempted by the workers' compensation act. (*Meninga* v. *Raley's, Inc.* (1989) 216 Cal.App.3d 79, 90 [264 Cal.Rptr. 319].)

Real parties also argue that Accardi's exclusive remedy lies within the provisions of Labor Code section 132a. This section provides remedies for employees whose employers have retaliated against them for filing a workers' compensation claim. The intent of the statute is to deter employers from discriminating against injured employees who assert their rights under the workers' compensation laws. (*Judson Steel Corp* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].) A claim under section 132a lies within the exclusive jurisdiction of the Workers' Compensation Appeals Board. (*Portillo* v. *G.T. Price Products, Inc.* (1982) 131 Cal.App.3d 285[182 Cal.Rptr. 291].)

Labor Code section 132a is not applicable here. Accardi does not claim her employer retaliated against her because she filed a workers' compensation claim. She claims she is the victim of sexual harrassment.

### *Sexual harassment—the creation of a hostile work environment because of a person's sex*

It is unlawful for an employer to discriminate against an individual because of their sex. (42 U.S.C. § 2000e-2(a)(1); Gov. Code, § 12940 et

seq.) Article I, section 8 of the California Constitution prohibits the discrimination in employment based on "sex, race, creed, color, or national or ethnic origin."

 Sexual harassment is a form of sex discrimination. (*Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 67 [91 L.Ed.2d 49, 59, 106 S.Ct. 2399]; *Katz* v. *Dole* (4th Cir. 1983) 709 F.2d 251, 254; Lindemann et al., Sexual Harassment in Employment Law (1992) pp. 9-10.) There are two actionable types of sexual harassment: 1. Quid pro quo harassment. This form of harassment occurs when a term of employment is conditioned upon unwelcome sexual advances. (*Highlander* v. *K.F.C. Nat. Management Co.* (6th Cir. 1986) 805 F.2d 644.) 2. The creation of a hostile work environment for the employee because of that employee's sex. (*Chamberlin* v. *101 Realty, Inc.* (1st Cir. 1990) 915 F.2d 777, 782, quoting 29 C.F.R. § 1604.11(a) (1983).) Hostile environment and quid pro quo harassment claims are not always separate and distinct, but in this case the sexual harassment claim arises out of a hostile work environment. (*Fisher* v. *San Pedro Peninsula Hospital*, *supra*, 214 Cal.App.3d at p. 607.)

The term "sexual harassment" may lead many people to think of the first type of sexual harassment, that which involves unwelcome sexual advances. For example, in *Henson* v. *City of Dundee* (11th Cir. 1982) 682 F.2d 897, a female police dispatcher stated a claim for sexual harassment where she alleged she had been denied promotion because she had rejected her supervisor's request for sexual favors. (See also *Sampayo-Garraton* v. *Rave, Inc.* (D.P.R. 1989) 726 F.Supp. 18.)

But sexual harassment of the second type, the creation of a hostile work environment, need not have anything to do with sexual advances. (*Andrews* v. *City of Philadelphia* (3d Cir. 1990) 895 F.2d 1469, 1485; *McKinney* v. *Dole* (D.C.Cir. 1985) 765 F.2d 1129, 1138 [246 App.D.C. 376]; see Lindemann & Kadue, Sexual Harassment in Employment Law (1992) p. 174.) It shows itself in the form of intimidation and hostility for the purpose of interfering with an individual's work performance. (*Chamberlin* v. *101 Realty, Inc.*, *supra*, 915 F.2d at p. 782, quoting 29 C.F.R. § 1604.11(a) (1983).) To plead a cause of action for this type of sexual harassment, it is "only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff 'had been a man she would not have been treated in the same manner.' " (*Tomkins* v. *Public Serv. Elec. & Gas Co.* (3d Cir. 1977) 568 F.2d 1044, 1047, fn. 4.)

This type of harassment can occur in a variety of ways. (*Andrews* v. *City of Philadelphia* (3d Cir. 1990) 895 F.2d 1469, 1485 [". . . the pervasive use

of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment."]; *Hall* v. *Gus Const. Co., Inc.* (8th Cir. 1988) 842 F.2d 1010 [incidents of cruel practical jokes, although not conduct of a sexual nature, may be properly considered to constitute sexual harassment]; *Broderick* v. *Ruder* (D.D.C. 1988) 685 F.Supp. 1269 [supervisor obtains sexual favors from subordinates other than complainant].)

As the *Fisher* court pointed out, " '[s]exual harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives its victim of her statutory right to work in a place free of discrimination, when the sexually harassing conduct sufficiently offends, humiliates, distresses or intrudes upon its victim, so as to disrupt her emotional tranquility in the workplace, affect her ability to perform her job as usual, or otherwise interferes with and undermines her personal sense of well-being.' [Citation.]" (*Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at p. 608.)

### Statute of limitations

A person who brings a cause of action for sexual discrimination, under the provisions of FEHA, must first file a claim with the DFEH. The administrative complaint must be filed within one year of the date upon which the alleged act of discrimination occurred. (Gov. Code, § 12960.)

There is an equitable exception to the one-year period that is known as the continuing violation doctrine. (*Waltman* v. *International Paper Co.* (5th Cir. 1989) 875 F.2d 468, 474-475.) Under this doctrine, a complaint arising under FEHA is timely if *any* of the discriminatory practices continues into the limitations period. (*Valdez* v. *City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1053 [282 Cal.Rptr. 726]; see also *Abrams* v. *Baylor College of Medicine* (5th Cir. 1986) 805 F.2d 528, 532-533.) Thus, a " '. . . ". . . systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." . . .' " (*Watson* v. *Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1290-1291 [261 Cal.Rptr. 204].)

Real parties argue that the continuing violation doctrine is not available to Accardi because there is no pattern of continuous sexual harassment. Her allegations of events occurring within one year prior to the filing of the DFEH complaint do not relate to sexual harassment. In support of this proposition, they note that those allegations merely concern a disputed workers' compensation claim, job assignments, and disability claims. Real

parties, therefore, assert that Accardi has failed to plead a continuous pattern of discrimination and, as such, her claim is barred by the statute of limitations. (*Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at p. 613.)

Real parties too narrowly define the scope of Accardi's sexual harassment claim. "Sexual harassment can take place in many different ways. A female worker need not be propositioned, touched offensively, or harassed by sexual innuendo—all of which occurred here." (*Burns* v. *McGregor Electronic Industries, Inc.* (8th Cir. 1993) 989 F.2d 959, 964.)

The gist of Accardi's complaint is that the Simi Valley Police Department waged a decade-long campaign against her. This campaign is founded upon the department's unwritten policy that law enforcement has traditionally been "a man's job" and, hence, "no women need apply." (See Schultz, *Telling Stories About Women and Work: Judicial Interpretations of Sex Segregation in the Workplace in Title VII Cases Raising the Lack of Interest Argument* (1990) 103 Harv. L.Rev. 1750.)

The circumstances alleged here are sufficiently severe and pervasive so as to establish the existence of a long-standing abusive working environment. (*Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. at p. 67 [91 L.Ed.2d at p. 59]; see also *Jordan* v. *Wilson* (M.D.Ala. 1986) 649 F.Supp. 1038, 1058 ["discriminating against women because they are women was and remains the 'standard operating procedure' within the City of Montgomery Police Department."].)

The amended complaint alleges that Accardi was first confronted with the hostile environment in 1980. Upon reporting for duty, she was advised that male officers did not wish to have a female officer on patrol with them. She claims that, in the ensuing years, she was the object of discrimination that took the form of threats, rejection, mockery, application of double standards, sexual advances, and intimidation. The amended complaint alleges a well-established pattern of conduct that created a hostile work environment from 1980 through 1989.

Did this pattern of conduct continue through 1991? Accardi claims that in 1989 she suffered a knee injury and was placed on restrictive duty. She alleges that in 1991 she was excluded from certain light duty assignments that were given to injured male officers. Accardi asserts that in 1991 city employees filed false and misleading medical reports that stated she was no longer disabled. She was told by her superiors to either declare herself 100 percent fit, or quit the police force.

Viewed in isolation, the acts which are alleged to have taken place in 1989 through 1991 may not be actionable for sex discrimination. But, a complaint

for sexual harassment must not be read too narrowly. (*Burns* v. *McGregor Electronic Industries, Inc.* (8th Cir. 1992) 955 F.2d 559, 564.) A single photograph of two sumo wrestlers engaged in combat may give the impression they are dancing a pas de deux. One must witness the entire match to appreciate its meaning and significance. "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." (*Andrews* v. *City of Philadelphia, supra,* 895 F.2d at p. 1484.)

The trier of fact must determine sex discrimination in light of " 'the record as a whole' " and " 'the totality of circumstances . . . .' " (*Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. at p. 69 [91 L.Ed.2d at p. 61]; *Snell* v. *Suffolk County* (2d Cir. 1986) 782 F.2d 1094, 1103.) A view of the events from beginning to end enables the trier of fact to see their relationship to one another, and consequently their meaning and significance. That there are gaps between specific incidents of sexual harassment does not preclude a finding of continuing violation. (*Waltman* v. *International Paper Co., supra,* 875 F.2d at pp. 475-476.)

The real parties' actions concerning Accardi during the years 1989 through 1991, if viewed as solitary events, could be nondiscriminatory, and therefore legitimate. A seemingly nondiscriminatory reason for an employment decision, however, may be a pretext for what in fact is a discriminatory reason for the employer's decision. (*Sims* v. *Cleland* (6th Cir. 1987) 813 F.2d 790, 792.)

Accardi may be able to prove that the real parties' actions in 1989 through 1991 were a continuation of prior discriminatory practices and that these actions were used as a pretext to provide a deceptive cover of legitimacy. The seemingly nondiscriminatory activities relating to job assignments because of disability may have been undertaken with the purpose of ridding the police department of female officers.

In other words, had Accardi been a man, she would have been classified as partially disabled. She would have been assigned to light duty tasks and would have been allowed to remain with the police force. This assertion, when coupled with the other actions which allegedly took place during Accardi's association with the Simi Valley Police Department, form a deliberate pattern of discrimination that continued during the entire period of her employment. (*Teamsters* v. *United States* (1977) 431 U.S. 324, 336 [52 L.Ed.2d 396, 416, 97 S.Ct. 1843]; *Waltman* v. *International Paper Co., supra,* 875 F.2d at pp. 474-477; *Shrout* v. *Black Clawson Co.* (S.D.Ohio 1988) 689 F.Supp. 774, 778-779.) If credited, these acts constitute a continuous manifestation of a sex-based animus that would bring the prior acts within the statute of limitations.

*Intentional infliction of emotional distress—not arising out of employment*

■ Emotional distress caused by misconduct in employment relations involving, for example, promotions, demotions, criticism of work practices, negotiations as to grievances, is a normal part of the employment environment. A cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law. (Lab. Code, § 3601, subd. (a); *Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 160.) The Legislature, however, did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices. (*Flait* v. *North American Watch Corp.* (1992) 3 Cal.App.4th 467, 480 [4 Cal.Rptr.2d 522]; *Goldman* v. *Wilsey Foods, Inc.* (1989) 216 Cal.App.3d 1085, 1095-1096 [265 Cal.Rptr. 294].)

Thus, a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices. (*Watson* v. *Department of Rehabilitation, supra,* 212 Cal.App.3d at pp. 1285-1286.) " '. . . A responsible attorney handling an employment discrimination case must plead a variety of statutory, tort and contract causes of action in order to fully protect the interests of his or her client. . . .' [Citation.] Although the common law theories do not per se 'relate to discrimination,' they are nonetheless a standard part of a plaintiff's arsenal in a discrimination case." (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 74 [276 Cal.Rptr. 130, 801 P.2d 373], italics deleted.)

Real parties cite *Davaris* v. *Cubaleski* (1993) 12 Cal App.4th 1583 [16 Cal.Rptr.2d 330], in support of their assertion that the exclusivity provision of the workers' compensation act bars petitioner's claim. In *Davaris,* the plaintiff claimed that she had been discriminated against when, after informing her employer that she needed time off in order to have a hysterectomy, she was terminated from employment.

The trial court sustained defendant's demurrer to the cause of action for intentional infliction of emotional distress. It ruled that the injuries alleged fell within the purview of the exclusivity provision of the Workers' Compensation Act. Plaintiff appealed. She asserted that her employer's conduct violated " 'the public policy of this state to encourage proper medical care.' " (*Davaris* v. *Cubaleski, supra,* 12 Cal.App.4th at p. 1589.)

The Court of Appeal rejected plaintiff's assertion. It held that plaintiff had failed to allege a cognizable public policy which was violated by her termination. (*Davaris* v. *Cubaleski, supra,* 12 Cal.App.4th at p. 1589.) It concluded that plaintiff's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation. (*Id.,* at p. 1588.)

■ In contrast to the plaintiff in *Davaris,* Accardi alleges that she suffered emotional distress because of the pattern of continuing violations

which were discriminatory; her cause of action for emotional distress is founded upon actions that are outside the normal part of the employment environment and violate this state's policy against sex discrimination. As such, her claim for emotional distress arising out of sexual harassment is not barred by the exclusivity provisions of workers' compensation laws. (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1100 [4 Cal.Rptr.2d 874, 824 P.2d 680].)

Accardi's cause of action for emotional distress relates to the same set of facts as alleged in the claim of discrimination. Her discrimination claims are based upon allegations of actions outside the normal part of her employment environment. Therefore, her claim for discrimination is not barred by the exclusivity provisions of workers' compensation law.

Real parties, in their petition for rehearing, argue that Accardi's common law cause of action for emotional distress is not tolled under the doctrine of continuing violations. They did not raise this argument in the trial court, nor did they raise it in their response to the original writ petition. ■ It is elemental that an issue may not be raised on appeal unless it has first been made in the court below. (*Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 779-780 [97 Cal.Rptr. 657, 489 P.2d 537].) To what extent, if any, Accardi's claim for emotional distress falls outside the statute of limitations will have to be the subject of future proceedings.

## Conclusion

The right to earn a living is not predicated upon the condition that one " '. . . run a gauntlet of sexual abuse . . . .' " (*Meritor Savings Bank v. Vinson, supra*, 477 U.S. at pp. 66-67 [91 L.Ed.2d at p. 59], quoting *Henson v. Dundee, supra*, 682 F.2d at p. 902.) Accardi alleges that because of her sex she was forced to suffer sexual harassment for 11 years while employed with the Simi Valley Police Department. She shall have the opportunity to prove these allegations.

Let a writ of mandate issue directing that respondent superior court set aside its order sustaining the demurrers to the first and third causes of action of the first amended complaint, and enter a new order overruling the demurrers. The alternative writ, having served its purpose, is discharged.

Stone (S. J.), P. J., and Yegan, J., concurred.

A petition for a rehearing was denied August 20, 1993, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied November 16, 1993.