Filed 3/14/22 Hiraishi v. DeLeon CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOI HIRAISHI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PENELOPE DELEON et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B310395<br>(Super. Ct. No. 56-2019-00533401-CU-OE-VTA)<br>(Ventura County) |

Joi Hiraishi appeals from the judgment after the trial court sustained a demurrer to her complaint against Kim Stephenson and Penelope DeLeon (collectively, Respondents) without granting leave to amend. She contends the court erred when it concluded that she failed to state claims for: (1) gender harassment against Stephenson, and (2) aiding and abetting against DeLeon. We affirm.

FACTUAL AND PROCEDURAL HISTORY

*Hiraishi's complaints about her workload and schedule*

Adolfo Camarillo High School (ACHS) is part of the Oxnard Union High School District (OUHSD). During the times

relevant to this appeal, Hiraishi taught science classes at ACHS, Stephenson was the ACHS principal, and DeLeon was the OUHSD superintendent.

In February 2017, Hiraishi complained to DeLeon that Stephenson had subjected her to disparate treatment in the scheduling of classes, evaluation of students, and provision of administrative support. Specifically, Hiraishi claimed that a male teacher in her department had a more favorable schedule and fewer assigned students. She claimed that Stephenson authorized the transfer of problematic students from male teachers' classes to her classes but declined to approve reciprocal transfers. She claimed that Stephenson refused to hire her as a soccer coach, instead hiring a male teacher with less experience. And she claimed that Stephenson refused various requests (e.g., for a laboratory assistant, to pay for various trainings, for a key to the faculty workroom) despite approving similar requests from her male counterparts.

DeLeon told Hiraishi that adjustments to ACHS's science program were underway. She agreed to meet with Hiraishi to discuss her concerns. Hiraishi did not schedule a follow-up meeting.

During the 2017-2018 school year, Hiraishi again complained about disparate treatment and "inequities in the master schedule." She alleged that many of the problems she previously identified had continued. DeLeon promised to review the complaint with Stephenson.

In April 2018, Hiraishi asked DeLeon "what had been done to remedy the issues" she had raised. DeLeon said that "she had personally reviewed the numbers" for every biology class at ACHS and concluded that "there was nothing inappropriate"

2

about the schedule or workload allocation. After Hiraishi submitted another complaint, DeLeon explained that there was a "'tried and true process' of creating a master schedule based on collaborative communication through department chairs and academy coordinators."

In May, the chair of the ACHS science department told Hiraishi that she would be assigned a full-time teaching schedule for the 2018-2019 school year. The next day, however, Stephenson told Hiraishi that she would only be offered a 40-percent schedule due to declining enrollment at ACHS. No male teacher had a similar schedule reduction. Stephenson said that Hiraishi could continue her full-time employment at the school if she agreed to teach chemistry classes in addition to biology. Alternatively, she could split her time teaching biology at ACHS and another OUHSD high school.

Hiraishi declined Stephenson's offers. She declined the first offer because she did not believe she had enough time to obtain a chemistry teaching credential. She declined the second because an alleged sexual harasser lived near the other school. Hiraishi then complained to DeLeon and the OUHSD Board of Trustees (Board) that Stephenson had retaliated against her for her earlier complaints. She demanded that she retain full-time employment at ACHS, and urged OUHSD officials to adjust the master schedule.

Over the ensuing weeks, Hiraishi proposed several alternatives that would allow her to retain full-time employment at ACHS. Stephenson rejected each alternative. Hiraishi then told DeLeon that Stephenson was "'intentionally making it impossible'" for her to work at ACHS and that Stephenson's actions seemed "'very retaliatory.'" She nevertheless agreed to

split her time teaching at ACHS and another school for the 2018-2019 school year. In return, Hiraishi requested full-time employment at ACHS in 2019-2020. When Stephenson declined this request, Hiraishi lodged a complaint with the Board, which forwarded it to DeLeon. DeLeon told Hiraishi that she had researched her complaint but took no additional action.

In the 2018-2019 school year, Hiraishi complained that the "daily lab set up and take down" for her classes was "too physically demanding," that she should not have to share a classroom, and that she should receive help transporting materials between schools. She filed a "work-related stress complaint" and requested a leave of absence.

Hiraishi went on family and medical leave in March 2019. While on leave, she filed another complaint after substitute teachers requested information on lesson plans and materials for her classes, claiming that being asked to respond to such requests while on leave was "further retaliation." After her leave ended, she filed complaints with the state Department of Fair Employment and Housing and the federal Equal Employment Opportunity Commission. She then took a "sabbatical leave of absence."

*The initial complaint*

Hiraishi sued Respondents, asserting claims of gender harassment against Stephenson and aiding and abetting against DeLeon.[1] Respondents demurred. They argued that Hiraishi failed to state a claim for gender harassment because the allegations pertained to official employment actions

---

[1] The complaint also asserted claims of retaliation and failure to prevent retaliation and harassment against OUHSD. Those claims are not part of this appeal.

4

Stephenson took on behalf of ACHS. They argued that Hiraishi failed to state a claim for aiding and abetting because she did not adequately plead gender harassment. Even if she did, DeLeon could not be personally liable for failing to prevent it. The trial court agreed with Respondents and sustained their demurrer. It granted Hiraishi leave to amend her complaint.

*The first amended complaint*

Hiraishi's first amended complaint added allegations that, in 2016, Stephenson: (1) denied her request for a laboratory assistant even though she granted a male teacher's request, (2) increased her workload by assigning more students to her classes than to the classes of male teachers, (3) transferred problem students from the classes of male teachers to her classes, (4) hired a male teacher instead of her for an open coaching position, and (5) provided support and equipment to male teachers but refused to provide it for her. Hiraishi also alleged that, in 2017 and 2018, Stephenson: (6) limited her to one assistant even though two male teachers had multiple assistants, (7) offered partial employment to her instead of to male science teachers, and (8) failed to hire her for positions that went instead to less-qualified male teachers.

As to DeLeon, the amended complaint included additional details about the agreed-upon meeting that Hiraishi did not schedule in early 2017 and about DeLeon's review of the enrollment numbers and master schedule. It also included additional quotes from Hiraishi's February 2017 communications with DeLeon.

Respondents again demurred, raising the same substantive arguments they had raised previously. The trial

5

court sustained their demurrer but granted Hiraishi leave to amend.

*The second amended complaint*

In addition to the allegations included in the previous complaints, Hiraishi's second amended complaint: (1) detailed the number of students in her classes and male teachers' classes, (2) alleged that Stephenson did not provide her with a key to the faculty workroom but provided one to male teachers, (3) asserted that ACHS once refused to pay for a substitute teacher, (4) asserted that a male teacher had greater than full-time employment during the 2018-2019 school year, (5) added more quotes from her correspondences with DeLeon and the Board, and (6) alleged that neither DeLeon nor the Board initiated an investigation in response to her complaints that Stephenson had retaliated against her.

Respondents again demurred, and requested that the demurrer be sustained without leave to amend. The trial court granted Respondents' request. It then entered a judgment of dismissal in Respondent's favor.

DISCUSSION

Hiraishi contends the trial court erred when it sustained Respondents' demurrer because she sufficiently pled her gender harassment claim. We disagree.

*Standard of review*

When a court sustains a demurrer, we independently determine whether the plaintiff's complaint states a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) If the cause of action is based in statute, the facts supporting each statutory requirement must be specifically pled. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 604.) We

6

deem true "'all material facts properly [pled in the complaint], but not contentions, deductions[,] or conclusions of fact or law.' [Citation.]" (*Blank*, at p. 318.) We reasonably interpret the complaint, "reading it as a whole and its parts in their context." (*Ibid.*) When the court denies leave to amend, we decide whether the plaintiff has shown a "reasonable possibility" that the defects in the complaint can be cured by amendment. (*Ibid.*) The burden of proving such a possibility is "squarely on the plaintiff." (*Ibid.*)

*Governing law*

The California Fair Employment and Housing Act (FEHA) prohibits a variety of conduct in the workplace, including gender discrimination and gender harassment. (See Gov. Code, § 12940, subds. (a) & (j)(1).) Discrimination focuses on "explicit changes in the 'terms, conditions, or privileges of employment' [citation]; that is, changes involving some official action taken by the employer." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706 (*Roby*), italics omitted.) Such actions may include "hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action." (*Ibid.*)

"By contrast, harassment often does not involve any official exercise of delegated power on behalf of the employer," but instead "focuses on situations in which the social environment of the workplace becomes intolerable because the harassment . . . communicates an offensive message to the harassed employee." (*Roby*, *supra*, 47 Cal.4th at p. 706, italics omitted.) It "'consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other

7

personal motives.'" (*Reno v. Baird* (1998) 18 Cal.4th 640, 646 (*Reno*).)

As we stated in *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 348 (*Accardi*), a hostile work environment can give rise to a gender harassment claim. Such a claim requires a plaintiff to show that they were forced to endure conduct that was unwelcome, based on their gender, and "'"sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive work environment."'" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279.)

Typically, official employment actions such as "'hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like'" will not provide the evidentiary basis for a hostile work environment gender harassment claim. (*Reno*, *supra*, 18 Cal.4th at pp. 646-647.) Such actions "'may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided . . . are those for discrimination, not harassment.'" (*Id.* at p. 647.) Sometimes, however, "the hostile message that constitutes . . . harassment [may be] conveyed through official employment actions." (*Roby*, *supra*, 47 Cal.4th at p. 708.) When so conveyed, "evidence that would otherwise be associated with a discrimination claim [may] form the basis of a harassment claim." (*Ibid.*)

For example, in *Miller v. Department of Corrections* (2005) 36 Cal.4th 446 (*Miller*), the Supreme Court considered "whether evidence of widespread sexual favoritism in the

8

workplace could constitute sexual harassment against the nonfavored employees." (*Roby*, *supra*, 47 Cal.4th at pp. 707-708.) "[T]he favoritism at issue . . . took the form of official employment actions, including promotions and favorable job assignments given to female employees involved in sexual relationships with a particular male supervisor." (*Id.* at p. 708.) The court concluded that the plaintiffs "nevertheless stated a prima facie case of harassment" because the "widespread sexual favoritism [they alleged] could convey a 'demeaning message . . . to female employees that they are viewed by management as "sexual playthings" or that the way required for women to get ahead in the workplace is to engage in sexual conduct with their supervisors or the management.' [Citations.]" (*Ibid.*)

Our Supreme Court further explained how evidence traditionally associated with a discrimination claim can support a harassment claim in *Roby*, *supra*, 47 Cal.4th 686. In that case, the plaintiff's harassment claim was based on "hostile social interactions in the workplace that affected the workplace environment because of the offensive message they conveyed." (*Id.* at p. 708.) The majority of the acts supporting the claim—a supervisor's "demeaning comments . . . about [the plaintiff's] body odor and arm sores, [her] refusal to respond to [the plaintiff's] greetings, [her] demeaning facial expressions and gestures toward [the plaintiff], and [her] disparate treatment of [the plaintiff] in handing out small gifts"—were "unrelated to [the supervisor's] managerial role, engaged in for her own purposes." (*Id.* at p. 709.) But other acts were "best characterized as official employment actions": the supervisor's "shunning of [the plaintiff] during staff meetings, [the] belittling of [the plaintiff's] job, and [the] reprimand[ing] of [the plaintiff] in front of [her] coworkers."

(*Ibid.*)  These official acts could "provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the [supervisor]."  (*Ibid.*)

*Miller*, *supra*, 36 Cal.4th 446 and *Roby*, *supra*, 47 Cal.4th 686 thus make clear that a supervisor's official employment actions can provide the evidentiary basis for a hostile work environment gender harassment claim under certain limited circumstances.  The key is showing that the actions had the "secondary effect of communicating a hostile message." (*Roby*, at p. 709.)  "This occurs when the actions establish a widespread pattern of bias."  (*Ibid.*)

*Analysis*

Hiraishi fails to establish the requisite pattern here because she has not pled sufficient facts to show that Stephenson's allegedly offensive conduct was so severe and pervasive that it created a hostile work environment.  The primary allegations in Hiraishi's complaint fall within several broad categories:  class size differentials, hiring decisions, promotion and demotion, personnel support, and access to facilities and equipment.  These allegations are best characterized as official employment actions.  But simply because Stephenson gave some of Hiraishi's male colleagues assignments and resources that Hiraishi would have preferred does not establish a claim for hostile work environment gender harassment.  Where, as here, a plaintiff offers comparative allegations of employment actions that disparately affected members of different genders, they must show that those actions had the "secondary effect of communicating a hostile message." (*Roby*, *supra*, 47 Cal.4th at p. 709.)  Hiraishi's complaint does not allege that Stephenson's actions conveyed such a message.

10

Nor did the so-called non-employment-related actions Stephenson allegedly took. Hiraishi characterizes several of the allegations against Stephenson—denying Hiraishi access to faculty-only facilities, lying about the reason for reducing Hiraishi's hours, and saying that she was not required to offer Hiraishi classes at ACHS[2]—as outside the scope of her duties as ACHS principal. According to Hiraishi, these non-employment-related actions reinforced the offensive message communicated by the official employment actions Stephenson allegedly took. (Citing *Roby*, *supra*, 47 Cal.4th at pp. 708-709.)

Even if we agreed with Hiraishi's characterization of Stephenson's actions, they would not support her hostile work environment gender harassment claim. In her complaint, Hiraishi alleges that Stephenson took her purportedly non-employment-related actions *in response to* Hiraishi's complaints: they occurred after Hiraishi criticized Stephenson's investigation and "in retaliation for" Hiraishi's "earlier complaints." And during the proceedings below Hiraishi admitted that she lodged the amended complaint "in the hopes" of preventing "a future claim/litigation for *retaliatory conduct.*" (Italics added.) Such retaliatory acts do not constitute gender harassment under FEHA. (*Brennan v. Townsend & O'Leary Enterprises, Inc.* (2011) 199 Cal.App.4th 1336, 1360-1361; see also *Lopez v. Routt* (2017) 17 Cal.App.5th 1006, 1017 [noting that harassment and retaliation claims are "fundamentally different"].)

---

[2] Hiraishi also asserts that Stephenson repeatedly broke promises to her, but the pages of the record cited do not support this assertion.

11

We also reject Hiraishi's assertion that the "social context" in which Stephenson's alleged conduct occurred supports her gender harassment claim. (Cf. *Miller*, *supra*, 36 Cal.4th at p. 462 [harassment should be considered in light of "'context in which particular behavior occurs'"].) Initially, we note that Hiraishi's complaint does not describe that context or how Stephenson's conduct within it amounted to harassment. More significantly, the conduct Hiraishi describes—Stephenson's decisions to demote Hiraishi, refuse to hire her for extracurricular positions, increase her workload, and deny her administrative support—are all actions one would expect to occur in the employment context, in stark contrast to the sexual relationships described in *Miller*. They also contrast with the situation described in *Accardi*, *supra*, 17 Cal.App.4th at page 350, in which we concluded that the plaintiff stated a claim for gender harassment based on the "threats, rejection, mockery, application of double standards, sexual advances, and intimidation" she endured. Such a "well-established pattern of conduct"—conduct one would not expect to occur in an employment setting— "created a hostile work environment." (*Ibid.*)

The trial court thus correctly sustained the demurrer to Hiraishi's gender harassment claim against Stephenson.[3] It follows that sustaining the demurrer to the aiding and abetting claim against DeLeon was also proper. (*Reno*, *supra*, 18 Cal.4th

---

[3] Hiraishi contends only that the facts alleged in the second amended complaint are sufficient to state a cause of action for gender harassment. She has thus failed to carry her burden of showing a reasonable possibility that the defects in her complaint can be cured by amendment. (*Blank, supra*, 39 Cal.3d at p. 318.)

at p. 655 [aiding and abetting claim requires prohibited action]; see also Gov. Code, § 12940, subd. (i).)

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

13

Benjamin F. Coats, Judge

Superior Court County of Ventura

_____

Tron & Tron, Lanny M. Tron and Terry L. Tron for Plaintiff and Appellant.

Greines, Martin, Stein & Richland, Timothy T. Coates, Nadia A. Sarkis; Woo Houska, Maureen M. Houska and Carol A. Woo for Defendants and Respondents.