[No. D031662. Fourth Dist., Div. One. Apr. 19, 2000.]

DAWN MURRAY, Plaintiff and Appellant, v.
OCEANSIDE UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Lambda Legal Defense and Education Fund, Myron Dean Quon, Jon W. Davidson; and Paula A. Brantner for Plaintiff and Appellant.

Maxie, Rheinheimer, Stephens & Vrevich, Darin L. Wessel; Law Office of Robert H. Lynn, Robert H. Lynn; Law Office of M. E. Stephens and M. E. Stephens for Tom Homann Law Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Swanson & McNamara, Ed Swanson; and Eugene N. Stuart III for Bay Area Lawyers for Individual Freedom as Amicus Curiae on behalf of Plaintiff and Appellant.

Stutz, Gallagher, Artiano, Shinoff & Holtz, Daniel R. Shinoff, Jeffery A. Morris and Paul V. Carelli for Defendant and Respondent.

## OPINION

**HUFFMAN, J.**—Plaintiff Dawn Murray filed a complaint against her employer, Oceanside Unified School District (Oceanside), alleging she suffered harassment on the basis of her sexual orientation (lesbian) at her place of work, Oceanside High School, where she has taught high school biology and biotechnology since 1983. She alleges that contrary to the protections afforded her under former Labor Code section 1102.1 (repealed Stats. 1999, ch. 592, § 12), referred to here as Labor Code section 1102.1), school officials failed to investigate the incidents and inflicted retaliatory discipline on her when she complained about them. She also contends the school officials' conduct on behalf of her employer amounted to intentional infliction of emotional distress by Oceanside.

Following extensive pretrial motion activity, the trial court granted a defense motion in limine to exclude evidence of all the incidents she alleged except one, as not falling within the protective coverage of Labor Code section 1102.1. The trial court further ruled that her remaining claim, failure to promote, was untimely, based on the administrative tort claims filed. (Gov. Code,[1] § 900 et seq.) Judgment was entered for Oceanside on both causes of action and Murray appeals.

Resolving the issues on appeal requires us to analyze the scope of coverage of both Labor Code section 1102.1 and certain newly enacted amendments to the Fair Employment and Housing Act (FEHA) (§ 12900 et seq.), which have added sexual orientation as a protected characteristic in the anti-workplace-harassment law. (Stats. 1999, ch. 592, § 1; § 12920 et seq., referred to here as Assembly Bill No. 1001.) We conclude that the trial court's interpretation of the Labor Code provision, section 1102.1, was unduly narrow, both as the matter was originally presented in the context of the Labor Code, and in the current context of the amendments to FEHA that were made while this matter was pending on appeal. These recent statutory amendments were intended to clarify existing law and, as such, may be retroactively applied to a pending matter such as this one.

---

[1]All statutory references are to this code unless otherwise stated.

Accordingly, further proceedings are required to flesh out the nature and scope of the activities which allegedly occurred that remain actionable as part of the anti-harassment law or as a common law tort, and that are timely made in light of the administrative claims made and the applicable limitations periods. We reverse the judgment and remand for further proceedings.

## Factual and Procedural Background

Murray has been employed by Oceanside for many years and has taught at Oceanside High School since 1983. She is acknowledged to be an excellent teacher who has consistently received good evaluations. She continues to work as a teacher at the high school. We will summarize the course of conduct that she claims amounts to sexual harassment based on sexual orientation, after outlining the formalities of this litigation.

Beginning on November 13, 1995, Murray filed three government tort claims with Oceanside, alleging workplace harassment on the basis of her sexual orientation. (§ 900 et seq.) The second and third claims were filed March 15, 1996, and June 19, 1996, respectively. All were rejected. Her complaint was filed in superior court on June 25, 1996, seeking damages for discrimination in violation of Labor Code section 1101 et seq. and for the tort of intentional infliction of emotional distress. Oceanside answered the complaint and extensive law and motion activity ensued. Oceanside brought two summary judgment motions and several reconsideration motions, which were denied. The matter was set for trial.

Shortly before trial, Murray obtained leave to file her supplemental and amended complaint to add several more recent allegations of a continuing course of harassing conduct. As summarized in this supplemental and amended complaint, Murray's claims are based upon an alleged pattern of discrimination and harassment based on her sexual orientation. Murray relies upon the public policy set forth in Labor Code sections 1101, 1102 and 1102.1, that prohibits discriminatory treatment in employment regarding political activity, also alleged to include discrimination based on actual and/or perceived sexual orientation. The same allegations also give rise to her second cause of action for intentional infliction of emotional distress based on Oceanside's abuse of authority and outrageous conduct. These various allegations may be grouped into six basic categories:

(1) In the spring of 1993, Oceanside failed to promote Murray to the position of student activities director, even though she was the top candidate (once another candidate withdrew), based on its disapproval of her lifestyle;

(2) From September 1993 through October 1994 she endured various insults, criticism, suggestive remarks concerning sex or alleging sexual

activity on campus, and rumor mongering by various fellow employees, and a consequent failure to investigate or take corrective action by Oceanside administrative officials. Murray was told if she pursued her complaints about these incidents, she would suffer adverse job consequences;

(3) In December 1994, January 1995 and February 1996 harassing and obscene graffiti was painted outside her classroom by unknown persons, and Oceanside administrators failed to investigate the problems even though the police were called;

(4) In January 1995 she was verbally harassed at a school in-service meeting when the principal mentioned Murray's sexual orientation to the audience, some of whom were unaware of this; harassing comments by coworkers ensued without proper management or preventative action by the administration;

(5) Although Murray received a prestigious statewide teaching award for biology in June 1995, the school district failed to accord her any appropriate recognition, which she believed was due to her sexual orientation; and

(6) In April 1996, September 1996, and June 1997 she had a class unfairly canceled and received unfair and retaliatory disciplinary measures, based on complaints by a parent and a fellow teacher, which were inappropriate and motivated by harassment.

The matter went to trial in January 1998 beginning with motions in limine by Oceanside to exclude all evidence pertaining to all claims by Murray except for the failure to achieve promotion. The trial court granted these motions, on the theory that only discriminatory conduct was prohibited by the Labor Code sections relied upon (§§ 1101, 1102 & 1102.1) such as hiring, firing and other employment decisions. The court rejected Murray's claims that she could plead the occurrence of other damaging actions in the workplace, creating a hostile environment, as actionable under the referenced statutes.

With the evidence thus limited, the trial court then turned to an analysis of the timeliness of Murray's remaining claim, the failure to promote. The parties reached a stipulation that Murray could not present any persuasive evidence that she did not learn of the facts leading her to believe she was denied the promotion based upon her sexual orientation until the time period after May 13, 1995 (six months before the first government tort claim was filed). Based on that stipulation, the court ruled the sole remaining actionable claim was untimely. The court agreed with Murray that sexual harassment per se was outside the normal scope of employment (based on case

law, *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341 [21 Cal.Rptr.2d 292] (*Accardi*)), and was thus not subject to the exclusive remedy of workers' compensation. However, based on its view that only discrimination allegations fell within Labor Code coverage, and the only discrimination claim was untimely, the trial court found the claim for intentional infliction of emotional distress (IIED) could not survive. The court entered a defense judgment.

Murray appealed. By leave of court, two organizations have filed amici curiae briefs supporting Murray's position in this appeal, the Tom Homann Law Association and the Bay Area Lawyers for Individual Freedom. (Cal. Rules of Court, rule 14(c).)

## Discussion

To determine if the trial court correctly concluded that these allegations of a hostile work environment, based on harassment on the basis of sexual orientation, fell outside the scope of coverage of Labor Code section 1102.1, we are required to set forth the evolution of the Labor Code statutory scheme, dealing with political freedom in the workplace, in which Labor Code section 1102.1 appears. (Lab. Code, § 1101 et seq.) We are then required to account for the effect of the Legislature's 1999 decision to repeal Labor Code section 1102.1 and place its protections within the FEHA instead, as part of Govenment Code section 12940, subdivision (h)(1). Because of that enactment, FEHA now deals with sexual orientation as a prohibited subject of workplace harassment, in addition to many other enumerated categories, such as race, national origin, sex and so forth. (§ 12940, subd. (h).)

We have requested and received supplemental briefing from the parties on the FEHA issue, which has included a request for judicial notice by Murray of a significant portion of the legislative history of Assembly Bill No. 1001, the bill that reenacted the Labor Code section 1102.1 provisions into FEHA. We granted that judicial notice request. (Evid. Code, §§ 451, subd. (a), 452, subd. (a), & 459, subd. (a).) This will assist us in the task of determining if discrimination and harassment in the workplace must be treated differently in this particular statutory and factual context.

We shall then turn to the issue of the timeliness of the allegation dealing with Murray's failure to be promoted, which the trial court deemed to fall potentially within the scope of the Labor Code, even though it ruled the related hostile-environment-style allegations did not. Also, in light of the statutory changes described above, all these allegations must be analyzed for

timeliness within the context of the administrative claims made. Finally, the IIED cause of action must be examined in light of the exclusive remedy scheme provided by workers' compensation law. (Lab. Code, § 3600 et seq.)

I

*Standard of Review; Retroactivity*

■ The parties agree that de novo review applies to these issues of statutory interpretation. " '[T]he construction of statutes and the ascertainment of legislative intent are purely questions of law. This court is not limited by the interpretation of the statute made by the trial court . . . .' [Citation.]" (*Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 391-392 [20 Cal.Rptr.2d 164].) ■ In applying the well-established rules of statutory construction, we are to determine the intent of the Legislature by construing in context the language of the statute. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].) Where the plain meaning of a statute is not evident, a court may consider both its legislative history and the wider historical circumstances of its enactment to ascertain legislative intent. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Although the Legislature's expressed views on the prior import of a statute are entitled to due consideration, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 [62 Cal.Rptr.2d 243, 933 P.2d 507] (*Western Security Bank*).)

■ Where, as here, a question arises about the retroactive effect of a statute that was enacted after the events giving rise to an action have occurred, the first rule to be considered is that "statutes do not operate retrospectively unless the Legislature plainly intended them to do so. [Citations.]" (*Western Security Bank, supra,* 15 Cal.4th at p. 243.) When the newly enacted statute substantially changes the legal consequences of past events, it is considered to have retrospective effect. (*Ibid.*) Newly enacted legislation may operate upon preexisting matters, rights, or obligations, unless the law conflicts with a constitutional protection. (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 486, p. 675.) For example, a law that substantially impairs or deprives a person of a vested right will invalidly deny due process. (*Ibid.*)

However, "[a] statute does not operate retrospectively simply because its application depends on facts or conditions existing before its enactment." (*Western Security Bank, supra,* 15 Cal.4th at p. 243.) The Supreme Court

further explained: "A corollary to these rules is that a statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment. We assume the Legislature amends a statute for a purpose, but that purpose need not necessarily be to change the law. [Citation.] Our consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning. [Citations.] Such a legislative act has no retrospective effect because the true meaning of the statute remains the same. [Citations.] [¶] . . . ' "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . [¶] If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change." (1A Singer, Sutherland Statutory Construction (5th ed. 1993) § 22.31, p. 279, fns. omitted.)' [Citation.]" (*Western Security Bank, supra*, 15 Cal.4th at p. 243.)

(4a) With these rules in mind, we first consider Murray's main argument: Labor Code section 1102.1 provides her a current cause of action for damages stemming from harassment on the basis of sexual orientation. We then turn to the question discussed in the supplemental briefing received, the effect of the Legislature's 1999 repeal of Labor Code section 1102.1 and placement of its protections within the FEHA, Government Code section 12940, subdivision (h)(1), to deal with sexual orientation as a prohibited subject of workplace harassment. The remaining issues will be subsequently addressed.

II

*Workplace Political Freedom Law: Labor Code Section 1101 et seq.*

The trial court's main theory of decision was that only discriminatory conduct was prohibited by the Labor Code sections relied upon, sections 1101, 1102 and 1102.1, which it said dealt only with hiring, firing and other employment decisions. The court rejected Murray's claims that she could

satisfy the statutory requirements by pleading the occurrence of other damaging actions in the workplace that allegedly created a hostile environment.[2] To test that analysis, we first outline the history of Labor Code section 1102.1. In parts III and IV, *post*, we will describe the consequences of the Legislature's 1999 repeal of this section and reenactment of its major provisions into FEHA.

According to Statutes 1992, chapter 915, section 1, pages 4399-4400, Labor Code section 1102.1 was enacted to codify the holding of *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 [156 Cal.Rptr. 14, 595 P.2d 592] (*Gay Law Students Assn.*).[3] That opinion arose out of an action brought against a public utility by class representatives of homosexual persons who were employees or applicants for employment with the defendant, and who were adversely affected by its alleged discrimination against gay and lesbian persons. One of the individual plaintiffs claimed that antihomosexual harassment led him to resign from his job with the utility. (*Gay Law Students Assn., supra*, at p. 465.) On review, the court held the plaintiffs' complaint successfully stated several causes of action against the employer, including one that sought relief from the employer's interference with the plaintiffs' political freedom or activities in violation of Labor Code sections 1101 and 1102. (*Gay Law Students Assn., supra*, at pp. 488-489.)[4]

Subsequently, from 1992 through 1999, Labor Code section 1102.1, subdivision (a) provided in pertinent part, "Sections 1101 and 1102 prohibit discrimination or different treatment in any aspect of employment or opportunity for employment based on actual or perceived sexual orientation." The section continued with definitions and stated exemptions from its coverage

---

[2]Labor Code section 1101 provides that "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy: [¶] (a) Forbidding or preventing employees from engaging or participating in politics . . . . [¶] (b) Controlling or directing, or tending to control or direct the political activities of affiliations of employees." Similarly, Labor Code section 1102 states that "[n]o employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity."

[3]Labor Code section 1102.1 also codified the holding of another appellate case, *Soroka v. Dayton Hudson Corp.* (Oct. 25, 1991, A052157), review of which was granted and ultimately dismissed without republication of the appellate court opinion. (Review dism. Nov. 10, 1993, request for publication den. by the Supreme Ct., Mar. 3, 1994 (S024102); Cal. Rules of Court, rule 976(d).)

[4]In the *Gay Law Students Assn., supra,* 24 Cal.3d 458, ruling, the Supreme Court also held the Fair Employment Practice Act (predecessor of FEHA) did not encompass discrimination on the basis of homosexuality. (*Id.* at p. 489.) As discussed herein, Labor Code section 1102.1 was enacted to fill that gap, and FEHA now continues that protection, as we are discussing. (Gov. Code, §§ 12926, 12940 et seq.)

(marital status classifications, affirmative action, illegal conduct, and criminal penalties). (Lab. Code, § 1102.1, subds. (b)-(f).)

██ Several cases have been decided under Labor Code section 1102.1, defining various aspects of its application. First, in *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590, 595 [18 Cal.Rptr.2d 33] (*Delaney*) the court flatly held that "[d]iscrimination on the basis of sexual orientation is outlawed by sections 1101 and 1102 of the Labor Code" based on the holding and codification of *Gay Law Students Assn., supra,* 24 Cal.3d 458. The court reasoned, "Since one who identifies himself or herself as gay or who defends homosexuality is protected as engaging in political activity [citation], it follows that employer policies against those believed to be homosexual are outlawed as fostering an atmosphere in which gay workers would be compelled not just to forego [*sic*] seeking equal rights but also to hide their sexual orientation." (*Delaney, supra,* at p. 596). In that case, "Delaney sought to allege that he was harassed through lewd comments and conduct by his coworkers and supervisors based upon their perception of him as homosexual. He further averred that he complained about his treatment and was terminated without good cause. We express no opinion regarding Delaney's ability to prevail on the merits, but hold that it was an abuse of discretion to deny his request to amend the complaint to allege violation of sections 1101 and 1102 of the Labor Code." (*Delaney, supra,* at p. 596.)

Next, in *Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1703-1704 [39 Cal.Rptr.2d 65] (*Leibert*), the court concluded that the fundamental public policy against discrimination on the basis of sexual orientation was adequately expressed in Labor Code section 1101 et seq. to meet the requirements for pleading a cause of action for wrongful termination in violation of public policy.

Shortly after judgment was entered in Murray's case, this court decided *Kovatch v. California Casualty Management Co.* (1998) 65 Cal.App.4th 1256, 1266-1267 [77 Cal.Rptr.2d 217] (*Kovatch*). There, we observed "California law expressly prohibits discrimination in any aspect of employment based on actual or perceived sexual orientation. (Lab. Code, § 1102.1, subd. (a).) Accordingly, a plaintiff who was actually discharged because of his or her sexual orientation may bring a tort claim for wrongful termination in violation of public policy. [Citing *Leibert, supra,* 32 Cal.App.4th at pp. 1702-1704.] *Likewise, a plaintiff who was constructively discharged because of harassment based on actual or perceived sexual orientation may bring such a claim.* [Citation.]" (65 Cal.App.4th at pp. 1266-1267, italics added.)

■ According to Oceanside, this case law does not resolve all the statutory interpretation issues presented here, mainly because Murray has not alleged any constructive or actual termination of her employment, and the cases on which she relies are thus factually distinguishable. However, for FEHA purposes, no loss of tangible job benefits is necessary to establish harassment. (§ 12940, subd. (h)(1).) Before returning to the case law precedent, we next turn to the 1999 actions of the Legislature in repealing this section and amending FEHA accordingly, as that is a more direct avenue of analysis under these historical circumstances.

### III

*Workplace Harassment: FEHA Coverage, Protected Categories and Retroactivity Issues*

■ The Legislative Counsel's Digest to section 1 of Statutes 1999, chapter 592 (Assem. Bill No. 1001), section 12920, provides a clear statement of the Legislature's intent in repealing Labor Code section 1102.1, and amending FEHA accordingly: "It is the intent of the Legislature that the purpose of this act is to incorporate in the California Fair Employment and Housing Act (Part 2.8 (commencing with Section 12900) of Division 3 of Title 2 of the Government Code) *the prohibition against discrimination or different treatment in any aspect of employment or opportunity for employment based on sexual orientation, contained in Section 1102.1 of the Labor Code, as that section read on December 31, 1999.* As was the intent of Section 1102.1 of the Labor Code, as that section read on December 31, 1999, this act is intended to codify the court decisions in Gay Law Students v. Pacific Telephone and Telegraph[, *supra*,] 24 Cal.3d 458 and Soroka v. Dayton Hudson Corp.[, *supra*, A052157], prohibiting discrimination based on sexual orientation. *Any conduct that would have been a violation of Section 1102.1 of the Labor Code, as it read on December 1, 1999, shall be deemed a violation of this act.* Nothing in this section is intended to alter the definition of employer with regard to any bona fide scouting organization covered under Section 1102.1 of the Labor Code as it read on December 1, 1999." (Historical and Statutory Notes, 44 West's Ann. Gov. Code (2000 supp.) foll. § 12920, p. 99, italics added.)[5]

As now amended in 1999, section 12940, subdivision (h) provides: "It shall be an unlawful employment practice, unless based upon a bona fide

---

[5]A companion bill, Assembly Bill No. 1670 (1999-2000 Reg. Sess.), was passed by the Legislature at the same time as Assembly Bill No. 1001, and made a number of technical and conforming provisions to FEHA and other civil rights legislation. Together these bills are known as the California Civil Rights Amendments of 1999, which took effect January 1, 2000. (Stats. 1999, ch. 591; Legis. Counsel's Dig., Assem. Bill No. 1670 (1999-2000 Reg. Sess.).)

occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] . . . [¶] (h)(1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, *because of* race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, *or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.* An entity shall take all reasonable steps to prevent harassment from occurring. *Loss of tangible job benefits shall not be necessary in order to establish harassment.*" (§ 12940, subd. (h)(1), italics added.)[6]

Based on this recent amendment, FEHA now clearly contains a prohibition of workplace harassment based on the protected category of sexual orientation. The definition of that quality now includes heterosexuality, homosexuality and bisexuality. (§ 12926, subd. (q).) This is consistent with the political freedom of expression protections which are at the root of Labor Code section 1101 et seq., and also Assembly Bill No. 1001. Labor Code section 1102.1 has also been interpreted to cover discrimination in any aspect of employment based on actual or perceived sexual orientation. (*Kovatch, supra,* 65 Cal.App.4th 1256, 1266.) ▇ Murray has requested in her supplemental briefing that her statutory cause of action be found viable not only under Labor Code section 1101 et seq., as originally pled, but also be deemed valid under FEHA as recently amended, because the amendment amounted to a clarification of existing law rather than a change in the law. We agree that both questions must be addressed to fully dispose of the issues on review.

In response to all of Murray's arguments, Oceanside takes the position that the enactment of Assembly Bill No. 1001 shows that the legislative and

---

[6]Section 12940, subdivision (h)(2) includes a provision that the provisions of this subdivision are declaratory of existing law "except for the new duties imposed on employers with regard to harassment." Those new duties are evidently those referred to in section 12940, subdivision (h)(3), which expands the definition of employer for purposes of harassment law from "any person regularly employing five or more persons" to "any person regularly employing one or more persons." (§ 12926, subd. (d).) Thus, the language of section 12940, subdivision (h) that refers to new duties does not refer to an expansion of substantive protections, but instead to an expansion of the definition of an employer. Also, Labor Code section 1102.1, subdivision (b)(1) defines an employer as having five or more employees. For our purposes here, that difference also does not affect the substantive protections afforded, as stated in the main portions of the legislation.

executive branches recognized that Labor Code section 1102.1 only afforded limited relief, and they thus must have intended to create broader protections on the basis of sexual orientation than were in existence under the Labor Code when Murray's action was filed. Although Oceanside does not oppose the propriety of taking judicial notice of the legislative history of Assembly Bill No. 1001, it contends that a proper interpretation of the documents involved results in the same conclusion it reached above, that the 1999 legislation created and expanded new rights, rather than restating or clarifying existing law. (Evid. Code, § 459, subd. (b) [reviewing court may determine the propriety of taking judicial notice or the tenor of the particular material noticed].)

On review, a court may find from its consideration of the surrounding circumstances "that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning. [Citations.] Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Western Security Bank, supra*, 15 Cal.4th at p. 243.) Because of the statement in the Legislative Counsel's Digest (Stats. 1999, ch. 592, § 1; § 12920), that "[a]ny conduct that would have been a violation of Section 1102.1 of the Labor Code, as it read on December 1, 1999, shall be deemed a violation of this act," we believe it is clear that the basic nature of Murray's statutory allegations is well within the scope of either or both of these statutory schemes, past and present. Moreover, because the reenacted and renumbered statutory prohibition may legitimately operate upon preexisting matters, rights, or obligations, so long as there is no conflict with a constitutional protection (such as substantial impairment or deprivation of a vested right), Murray's claims may be pursued on either or both statutory fronts. (See 7 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 486, pp. 675-676.) Oceanside had no vested right to conduct its employment affairs in a manner that violated established public policy. Nor did the provisions of Assembly Bill No. 1001 substantially change the legal consequences of past events, so as to place any unfair new burdens on Oceanside as an employer. However, as the statutes have now been clarified, Murray still retains the right to pursue these statutory claims.

Since we have found no bar to either statutory theory in the area of retroactive application, our next inquiry is which of Murray's allegations are sufficient as a matter of law under both of these alternative statutory causes of action, both substantively and as to timeliness.

IV

*Analysis: Type of Allegation and Timeliness*

As described above, the Legislature took action in Assembly Bill No. 1001 to merge the protections of Labor Code section 1102.1 into the FEHA body of law. Thus, in order to analyze Oceanside's and the trial court's conclusions that the Labor Code statutory scheme did not extend to hostile-environment-style claims, as opposed to adverse employment consequences such as termination of employment, we must examine the Supreme Court's recent pronouncements in the FEHA area to distinguish between discrimination and harassment based on sexual orientation. In *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132 [90 Cal.Rptr.2d 804, 988 P.2d 1083] (*Carrisales*), the court concluded that although section 12940, subdivision (h)(1) prohibits any "person" from harassing an employee, the statute imposes on the employer the duty to take all reasonable steps to prevent this harassment from occurring in the first place and to take immediate and appropriate action when it is or should be aware of the conduct. "Consistent with the FEHA's primary concern with unlawful employment *practices*, it does not also impose personal liability for harassment on nonsupervisory coworkers." (*Carrisales, supra*, 21 Cal.4th at p. 1140.) The Supreme Court explained: " 'When the workplace is permeated with discriminatory intimidation, ridicule and insult that is " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' " the law is violated.' (*Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 409 [27 Cal.Rptr.2d 457], quoting *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21 [114 S.Ct. 367, 370, 126 L.Ed.2d 295].) If the harasser is a nonsupervisor, and the employer takes immediate and appropriate corrective action when informed of the conduct, this standard is not met." (*Carrisales, supra*, at p. 1137.)

Proceeding with its analysis, the court distinguished between the unlawful acts of discrimination by an employer, or harassment by an individual supervisor or coworker: "Contrary to plaintiff's argument, *Reno v. Baird* [(1998)] 18 Cal.4th 640 [76 Cal.Rptr.2d 499, 957 P.2d 1333], does not compel a contrary conclusion. That case involved solely the question of individual liability for *discrimination*. We expressed no opinion 'regarding individuals' liability for harassment.' (*Id.* at p. 645, fn. 2.) To support our conclusion that only the employer is liable for discrimination, we noted the difference in the statutory treatment of discrimination and harassment. (*Id.* at pp. 644-645.) Section 12940 does indeed treat the two differently, and for a reason. 'Whatever similarities there may be between [discrimination and

harassment], the *employer* ultimately does the former; coworkers and supervisors do the latter.' (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 657, original italics.) This differing statutory language means that our conclusion regarding discrimination does not compel a similar conclusion regarding harassment. It does not, however, compel a contrary conclusion either. It merely means that each question must be decided separately, considering the discrimination language to decide the discrimination issue, as we did in *Reno* v. *Baird,* and independently considering the harassment language to decide the harassment issue, as we do here." (*Carrisales, supra,* 21 Cal.4th at p. 1137.)

 To the extent Murray has alleged discrimination took place against her on the basis of sexual orientation, we may be guided by *Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 64-67 [106 S.Ct. 2399, 2404-2406, 91 L.Ed.2d 49], which held that hostile environment sexual harassment violates federal law affording employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult, where it affects a term, condition, or privilege of employment. That is, severe or pervasive sexual harassment alters the conditions of the victim's employment and creates an abusive working environment. (*Ibid.*) These principles have now been incorporated into FEHA, as applicable to sexual orientation discrimination.

Moreover, the law as to sexual orientation harassment is not far behind. As directed by *Carrisales, supra,* 21 Cal.4th 1132, we must focus upon the particular statutory language involved independently to decide the harassment and discrimination issues. (*Id.* at p. 1137.) First, Labor Code section 1102.1 provided, "Sections 1101 and 1102 prohibit *discrimination or different treatment in any aspect of employment* or opportunity for employment based on actual or perceived sexual orientation." (Italics added.) This is broad language evidently intended as remedial action, pursuant to the guidance of the Supreme Court's interpretation of "political freedom" or "political activity" in *Gay Law Students Assn., supra,* 24 Cal.3d at pages 486-488. Remedial legislation is to be liberally construed to accomplish its evident purpose. (*Brown v. Smith* (1997) 55 Cal.App.4th 767, 778 [64 Cal.Rptr.2d 301].) Murray has alleged a number of instances in which she was allegedly treated differently than other employees might have been, chiefly or entirely because of her known or perceived sexual orientation. Under a plain language reading of the Labor Code statutes, section 1101 et seq., it was error to grant her motion in limine and to dismiss her action.

Next, under case law authority, such as *Leibert, supra,* 32 Cal.App.4th 1693 and *Delaney, supra,* 14 Cal.4th 590, the trial court had before it several broad interpretations of the Labor Code statutory scheme concerning political freedom, as well as the Supreme Court's definition of sexual orientation

as falling within the political freedom sphere. (*Gay Law Students Assn.,* *supra,* 24 Cal.3d at pp. 486-489.) It was error to distinguish those cases factually, as involving only constructive or actual termination, and thus to interpret Labor Code section 1101 et seq. as narrowly as did the trial court regarding harassment.

Further, with respect to Murray's FEHA-type claims, as transferred and endorsed by the Legislature in Assembly Bill No. 1001, the focus of FEHA is upon unlawful employment practices, as conducted by an employer. (*Carrisales, supra,* 21 Cal.4th at p. 1137.) Here, Murray has sued Oceanside, her employer, not any individual defendants, and has alleged that the Oceanside administration tolerated and/or condoned instances of coworker verbal harassment or lack of investigation of various incidents. As pointed out by the Supreme Court, "Whatever similarities there may be between [discrimination and harassment], the *employer* ultimately does the former; coworkers and supervisors do the latter." (*Reno v. Baird, supra,* 18 Cal.4th at p. 657.) In this context, although Murray has alleged both discrimination and harassment, the bulk of her allegations fall into the category of harassment. FEHA clearly requires an employer to take appropriate preventative or remedial action when placed upon appropriate notice of such workplace conduct. (§ 12940, subd. (h)(1).) Murray started filing claims in November 1995 placing her employer on such notice. Murray is now entitled to pursue her claims that these unlawful employment practices took place, within the FEHA statutory context, as recently amended.

Moreover, under section 12940, subdivision (h)(1), "Loss of tangible job benefits shall not be necessary in order to establish harassment." To benefit from the statutory protections, there is no requirement that adverse employment consequences such as termination of employment be suffered first. If "[a]ny conduct that would have been a violation of Section 1102.1 of the Labor Code, as it read on December 1, 1999, shall be deemed a violation of [FEHA as amended]," then harassing conduct, as well as adverse employment consequences, are each fully actionable when sexual orientation harassment in the workplace is involved. (Stats. 1999, ch. 592, § 1.) Either or both theories may be pursued in this action, based on the time of its filing and the retroactive effect that is allowed to legislation that has clarified a statute's true meaning. (*Western Security Bank, supra,* 15 Cal.4th at p. 243.)

Having discussed the statutory interpretation questions presented, but mainly in the abstract, we are now required to apply them to this record and the ruling as issued.

## V

### Administrative Claims Procedures

We have concluded above that the statutory protections afforded to a person in Murray's position extend not only to discrimination allegations against the employer, such as Murray's failure to be promoted, but also to the related workplace harassment allegations. What then is required in the nature of exhaustion of administrative remedies since these claims arose in the context of a public entity employer? The trial court made a finding that a claim based upon Labor Code section 1102.1 is subject to the provisions of the California Tort Claims Act, Government Code section 900 et seq. The trial court ruled that no complete statutory scheme existed to take Labor Code section 1102.1 outside of the California Tort Claims Act, and under that act, Murray's only viable claim was untimely because it was not filed within six months after she learned of the denial of her requested promotion to student activities director, and thus learned of the existence of her cause of action.

To evaluate this ruling, we must look not only to the California Tort Claims Act but also to two other potentially applicable administrative claims structures: Labor Code section 98.7, pertaining to Labor Code section 1101 et seq., and the enforcement and hearing procedure set forth in FEHA, section 12960 et seq. We discuss these in turn.

### A

### California Tort Claims Act: Background

 In *Garcia v. Los Angeles Unified School Dist.* (1985) 173 Cal.App.3d 701, 712 [219 Cal.Rptr. 544] (*Garcia*), the Court of Appeal described the purposes of the general claims presentation requirement, "which are to give the public entity an opportunity to settle a claim before suit is brought, to permit early investigation of the facts, to facilitate fiscal planning for potential liabilities, and to avoid similarly caused injuries or liabilities in the future. [Citation.]" The court also noted, " 'The provisions of the FEHA for filing of a complaint with the department, administrative investigation, and service of the complaint on the employer serve a similar function.' [Citation.]" (*Id.* at p. 712.) In that case, where the public entity defendant had notice of an appellant's claim through a federal Equal Employment Opportunity Commission claim and a state Department of Fair Employment and Housing complaint, and had the opportunity to investigate and resolve the claim through the statutory procedures provided by those agencies, there was

no violation of any public policy in a conclusion that the appellant was not required also to file a government tort claim with the entity. (*Ibid.*)

B

*Labor Code Section 98.7*

In *Leibert, supra,* 32 Cal.App.4th at page 1704, the Court of Appeal noted that Labor Code sections 1101, 1102 and 1102.1 are silent regarding administrative remedies. It continued: "Section 98.7, a more recent addition to the Labor Code, provides: '[a]ny person who believes that he or she has been discharged or otherwise discriminated against in violation of any provision of this code under the jurisdiction of the Labor Commissioner *may* file a complaint with the division [Division of Labor Standards Enforcement]. . . .' ([Lab. Code,] § 98.7, subd. (a), italics added.) The section outlines a process of investigation and decision by the Labor Commissioner. . . . [S]ubdivision (f) states: 'The rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other provisions of law.' " (32 Cal.App.4th at p. 1704.) In *Leibert,* the court did not decide whether exhaustion of Labor Code administrative remedies was a precondition to the bringing of a direct statutory cause of action, as the plaintiff had misleadingly pled such exhaustion had occurred (even though it had not in fact been done). (*Id.* at p. 1698.) The court instead based its decision that an aggrieved employee need not exhaust administrative remedies prior to bringing a nonstatutory claim (wrongful discharge in violation of public policy or IIED) on the facts that the administrative remedies were nonexclusive and it would violate public policy to restrict the bringing of such nonstatutory claims only to those cases where some administrative remedies had been pursued. (*Id.* at pp. 1706-1707.)

As applied here, *Leibert, supra,* 32 Cal.App.4th 1693, imposes no requirement that Murray have proceeded through the Labor Code administrative procedures in order to pursue her statutory or nonstatutory claims. The legislative history of Labor Code section 1102.1, as enacted in 1992, indicates that the Governor, in his message on signing the bill, anticipated that such administrative procedures through the Labor Commissioner would be employed in pursuing such a cause of action. However, that requirement was not made express in the statute. (Lab. Code, § 1102.1; Governor's message to Assem. on Assem. Bill No. 2601 (Sept. 25, 1992) 6 Assem. J. (1991-1992 Reg. Sess.) p. 10287.)

Murray did not follow this avenue of administrative relief, instead filing her governmental tort claims. We next consider what effect the recent

placement of Labor Code section 1102.1 provisions into FEHA has upon the viability of her statutory cause of action.

C

*FEHA Administrative Remedies: Section 12960 et seq.*

In *Garcia, supra,* 173 Cal.App.3d at pages 710-711, the court explained that actions brought under FEHA have been held exempt from the claims presentation requirements of the general Tort Claims Act. Instead, "The FEHA contains specific time limitations related to the remedies provided: a verified complaint must be filed with the Department of Fair Employment and Housing within one year of the unlawful practice (Gov. Code, § 12960); the department must serve the employer with the complaint within 45 days of filing or at the time of initial contact (Gov. Code, § 12962); if an accusation is not issued within 150 days after filing of the complaint, or if the department earlier determines that no accusation will issue, the department shall so notify the charging party in writing, informing that party that he may bring a civil action under the act against the party named in the complaint within one year from the date of that notice. (Gov. Code, § 12965.) 'The above provisions demonstrate a legislative intention to exempt actions under the FEHA from the general Tort Claims Act requirements. The procedural guidelines and the time framework provided in the FEHA are special rules for this particular *type* of claim which control over the general rules governing claims against governmental entities. The FEHA not only creates a statutory cause of action, but sets out a comprehensive scheme for administrative enforcement, emphasizing conciliation, persuasion and voluntary compliance, and containing specific limitations periods. [Citation].' " (*Garcia, supra,* at pp. 710-711.)

It is also well established that although a person bringing a cause of action for sexual discrimination (now also harassment) under the provisions of FEHA must first file an administrative complaint within one year of the date upon which the alleged acts occurred, there is an exception to this rule, known as the continuing violation doctrine. (*Accardi, supra,* 17 Cal.App.4th 341, 349.) "Under this doctrine, a complaint arising under FEHA is timely if *any* of the discriminatory practices continues into the limitations period. [Citations.] Thus, a ' ". . . '. . . systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.' . . ." ' [Citation.]" (*Ibid.*)

In Murray's case, she pursued governmental tort claims procedures under section 900 et seq. Our next inquiry is whether that variety of

administrative claim was sufficient to preserve her rights to either a Labor Code or a FEHA cause of action, with respect to the timeliness of the allegations made. Here, Murray filed government tort claims three times, on November 13, 1995, March 15, 1996, and June 19, 1996. Her complaint for damages was filed in superior court on June 25, 1996. As amended and supplemented, it makes allegations of sexual orientation workplace harassment beginning in 1993, as did the tort claims. In *Accardi, supra,* 17 Cal.App.4th 341, the Court of Appeal applied the continuing violation doctrine to allow the plaintiff to proceed beyond the pleadings stage, in order to attempt to prove that her former employer's actions that would otherwise have been outside the limitations period were actually a continuation of prior discriminatory practices, used as a pretext to provide a deceptive cover of legitimacy, for an illegitimate purpose. (*Id.* at p. 351.)

With all these factors in mind, we conclude that the purposes of the Tort Claims Act (§ 900 et seq.), as set forth in *Garcia, supra,* 173 Cal.App.3d at page 712, have been adequately protected by the procedures followed here. Moreover, since this action now falls within the scope of FEHA, according to the 1999 act of the Legislature in enacting Assembly Bill No. 1001, the relevant time for evaluating the claims requirements is one year before the first tort claim was filed on November 13, 1995, pursuant to section 12960.

The nature of the trial court ruling that we review, that only one of the 13 incidents alleged was actionable, makes it necessary for us to discuss the current problems with Murray's pleading of facts. In light of the legal questions discussed above, the supplemental and amended complaint contains some extraneous or anomalous material. Thus, upon remand, the trial court is directed to allow Murray to amend her supplemental and amended complaint to allege substantial compliance with the administrative claims requirements for those allegedly harassing acts dating back to November 13, 1994. As to those claims, Oceanside has been put on sufficient notice to enable it to investigate and act upon the claims.

Despite our finding that substantial compliance has been made with the applicable claims requirements, we wish to stress that Murray is not exempt from the acceptable standards for pleading and proving workplace harassment claims, that the only conduct which is deemed actionable is that of sufficient severity and pervasiveness to create a genuinely hostile work environment. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 610-612 [262 Cal.Rptr. 842]; see *Carrisales, supra,* 21 Cal.4th 1132, 1136-1137.)

Moreover, limitations requirements must be observed. On this record, we do not deem this to be an appropriate case for application of the continuing

violation doctrine, insofar as the statutory causes of action are concerned. At all times, the parties both demonstrated a reasonable expectation that some administrative claims period would apply, and Murray was willing at the trial proceedings to stipulate that she could not prove she learned of the failure to promote her before the May 13, 1995, cutoff date used in the prior proceedings. Although the cutoff date should now be extended to November 13, 1994 (one year before the first claim was filed), we have been given no equitable reason to extend it further as to either of the statutory causes of action. (*Accardi, supra,* 17 Cal.App.4th at p. 349.) In conclusion, we decline at this stage of the litigation, when the trial of factual issues has not yet begun and the pleadings are still taking shape, to express any opinion on whether her allegations will meet the standards that have been created for harassment claims based on a hostile work environment showing.

As will next be explained, however, we reach a different result on the continuing violations doctrine as it applies to the common law tort of IIED.

## VI

### Intentional Infliction of Emotional Distress

In *Accardi, supra,* 17 Cal.App.4th at pages 352-353, the Court of Appeal explained that emotional distress caused by misconduct in employment relations (e.g., promotions, demotions, criticism of work practices, or grievance negotiations) may, regrettably, be considered to be a normal part of the employment environment. Thus, "[a] cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law. [Citations.] *The Legislature, however, did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices.* [Citations.] [¶] Thus, a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices." (*Id.* at p. 352, italics added; also see *Leibert, supra,* 32 Cal.App.4th at pp. 1706-1707.)

Similarly, in *Kovatch, supra,* 65 Cal.App.4th 1256, this court compared the element of a cause of action for intentional infliction of emotional distress, "outrageous conduct," in the sexual harassment context to the sexual orientation harassment context. We said, "In *Fisher*[, *supra,* 214 Cal.App.3d 590], the court held that '. . . by its very nature, sexual harassment in the work place is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society. [¶] Accordingly, if properly pled, sexual harassment will constitute the outrageous behavior element of a

cause of action for intentional infliction of emotional distress . . . .' (*Id.* at p. 618.) *We hold that the same is true of harassment based on sexual orientation.*" (*Kovatch, supra,* at p. 1278, italics added.) We then found that Kovatch's evidence was sufficient to create a triable issue of fact as to whether a reasonable person would have found working conditions at his former employer's office intolerable, and was also sufficient to create a triable issue as to whether the conduct he experienced was outrageous. (*Ibid.*)

Accordingly, where a plaintiff can allege that she suffered emotional distress because of a pattern of continuing violations that were discriminatory, her cause of action for infliction of emotional distress will not be barred by the exclusivity provisions of workers' compensation laws. This is so because the claim is "founded upon actions that are outside the normal part of the employment environment . . . ." (*Accardi, supra,* 17 Cal.App.4th at p. 353.) Additionally, the same is true of harassment based on sexual orientation, where it has taken on the required degree of outrageousness. (*Kovatch, supra,* 65 Cal.App.4th at p. 1278.)

█ In light of these rules bearing upon this common law cause of action, and also in light of the development of the statutory law in this area, Murray should be allowed the opportunity to seek to prove a pattern of continuing violations of the public policy against workplace harassment on the basis of sexual orientation, i.e., those actions that lie outside the normal scope of employment relations. This nonstatutory cause of action is not subject to the administrative claims requirements of FEHA, nor the Labor Code, nor the Tort Claims Act, for those reasons. (*Leibert, supra,* 32 Cal.App.4th at p. 1706.) However, the one year statute for personal injury, Code of Civil Procedure section 340, subdivision (3), will apply, and it is that statute of limitations that Murray must work within at trial. (*Accardi, supra,* 17 Cal.App.4th at pp. 352-353; see 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 530, pp. 665-666.)

Finally, even though we concluded above (pt. V, *ante*) that the continuing violations doctrine had no application to the statutory causes of action on this record, we are unable to reach that same conclusion as to this common law cause of action. In other words, actions that occurred before the November 13, 1994, cutoff date for the statutory actions may be relied upon, if they fit the requirements of the continuing violations doctrine for a common law cause of action for IIED. (*Accardi, supra,* 17 Cal.App.4th at pp. 352-353.) Also, the necessary outrageousness of the defendant's conduct must be proven according to case law standards. (*Kovatch, supra,* 65 Cal.App.4th at

pp. 1277-1278.) The supplemental and amended complaint sufficiently raises these issues, and within these strict parameters, further proceedings may take place in the trial court as appropriate.

## DISPOSITION

The judgment is reversed and the trial court is directed to allow (1) further proceedings to give Murray the opportunity to amend her supplemental and amended complaint to allege substantial compliance with administrative claims requirements for those allegedly harassing acts dating back to November 13, 1994, that constitute severe and pervasive harassing conduct, and (2) any such further proceedings as may be appropriate to resolve disputed factual issues regarding the statutory cause(s) of action and the separate cause of action for IIED, with respect to those claims of outrageous conduct that fall outside the scope of the employment bargain, including any continuing violations theory. Costs on appeal are awarded to appellant Murray.

Benke, Acting P. J., and Nares, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 9, 2000.