Filed 8/21/24  Smith v. Sonoma Valley Health Care Dist. CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DEBRA LINN SMITH,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>SONOMA VALLEY HEALTH CARE DISTRICT, et al.,<br><br>     Defendants and Respondents. | A168045<br><br>(Sonoma County Super. Ct. No. SCV269916) |

The trial court sustained a demurrer to plaintiff Debra Linn Smith's complaint without leave to amend.  On appeal, plaintiff contends the court erroneously found her claims under the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.[1]; CMIA) were barred due to a six-month deadline for presenting a claim under the Government Claims Act (Gov. Code, § 810 et seq.).  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff sued her former employer, the Sonoma Valley Health Care District doing business as the Sonoma Valley Hospital ("the hospital") and

---

[1]     Unless otherwise specified, all undesignated statutory references are to the Civil Code.

Meghan Healy, who works for the hospital's human resources department, as well as the Sonoma Valley Hospital Foundation and Lynn McKissock, who works for the foundation's human resources department (collectively, defendants).

The first amended complaint (the complaint) alleged the following: Plaintiff was a surgery scheduling coordinator for the hospital for over 20 years. In August 2021, Healy emailed plaintiff seeking information regarding her COVID-19 vaccination status. Healy told plaintiff that she needed to fill out a form if she was declining to provide the information, and that plaintiff could direct any questions to McKissock. In September 2021, plaintiff informed McKissock by email that she did not consent to releasing her medical information and that she wanted the hospital to cease all inquiries into her medical information. McKissock responded that hospital policy required testing of unvaccinated employees as a condition of employment, that this policy applied to plaintiff, and that plaintiff was prohibited from working until she could show a negative test result. McKissock informed plaintiff—who made clear she would not be tested—that she was immediately placed on unpaid leave until she complied with the policy. Plaintiff emailed McKissock and reiterated that she would not be tested for COVID-19 and that the hospital should stop asking her for medical information. On September 28, 2021, McKissock informed plaintiff the hospital was terminating her employment due to her failure to comply with the COVID-19 testing policy. Plaintiff allegedly suffered "tremendous financial detriment due to the termination."

Plaintiff's complaint set out two causes of action under the CMIA. Her first cause of action alleged the hospital and its agents discriminated against her by terminating her employment based on her refusal to release her

medical information. (§ 56.20, subd. (b).) Her second cause of action alleged defendants violated the CMIA by terminating her based on her medical history and her being "unvaccinated." (See § 56.20, subd. (c).) The complaint also included a third cause of action for fraud, based on allegations that McKissock and Healy made false representations concerning the legality of the hospital's policies and actions. Plaintiff specifically alleged she submitted a claim under the Government Claims Act on May 6, 2022.

Defendants filed a demurrer. As relevant here, defendants contended the complaint alleged causes of action for "injury to a person or to personal property,"[2] which were barred because plaintiff failed to timely present a government claim within six months from the date of the alleged injury, as required by Government Code section 911.2. That is, plaintiff suffered her alleged injury when she was terminated on September 28, 2021, so the six-month period expired on March 28, 2022 and rendered the submission of her government claim on May 6, 2022 untimely.

The trial court sustained the demurrer without leave to amend. The court found all causes of action were barred under Government Code section 911.2 because plaintiff failed to present her claim to defendants within six months of accrual. The court further found that all causes of action were barred under Government Code section 945.4 because plaintiff failed to present a written claim to the hospital prior to filing her lawsuit. Plaintiff appealed.[3]

---

[2] The demurrer also contended that the Sonoma Valley Hospital Foundation was not a proper party to the action, and that the CMIA causes of action could only be pursued against the hospital, not McKissock and Healy. We will not discuss these aspects of the demurrer because they have not been raised on appeal.

[3] An order sustaining a demurrer without leave to amend is not appealable; any appeal must be taken from the subsequent judgment of

3

## DISCUSSION

As indicated, the trial court sustained defendants' demurrer without leave to amend on two alternative grounds—(1) failure to present a claim before expiration of the six-month claims presentation period (Gov. Code, § 911.2) and (2) failure to submit her claim to the hospital before filing her lawsuit (*id.*, § 945.4). Plaintiff's opening brief, however, only challenges the trial court's application of the six-month claims presentation period. Contending that her causes of action under section 56.20, subdivisions (b) and (c), were statutory, she argues the court should instead have applied the twelve-month claims presentation period provided under Government Code section 911.2. We disagree.

Government Code section 911.2 requires that a plaintiff timely present a claim for money or damages to the public entity as a condition precedent to the filing of a lawsuit against the entity. (*California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591.) "A claim

___

dismissal. (*Meinhardt v. City of Sunnyvale* (July 29, 2024, S274147) ___ Cal.5th ___ [p. 8] [2024 Cal. Lexis 4143].) Here, plaintiff's notice of appeal purports to appeal from a judgment of dismissal after an order sustaining a demurrer, and states that judgment was entered on May 10, 2023. But no judgment dated May 10, 2023 appears in the record. Instead, the record contains an order file stamped May 8, 2023 sustaining defendants' demurrer to the first amended complaint.

Nevertheless, "[t]he fact that no judgment of dismissal was entered on the order sustaining the demurrer does not present an insurmountable obstacle to the appeal." (*Shepardson v. McLellan* (1963) 59 Cal.2d 83, 88.) It would be inefficient to dismiss the appeal, order the trial court to enter judgments of dismissal on the sustained demurrers, and then permit a subsequent appeal from the dismissals. (*Ibid.*) Instead, as the parties treat the appeal as properly before us, we deem each "order sustaining [the] demurrer to incorporate a judgment of dismissal and interpret[ ] plaintiff's notice of appeal as applying to such dismissal." (*Federer v. County of Sacramento* (1983) 141 Cal.App.3d 184, 185; *Meinhardt v. City of Sunnyvale, supra,* ___ Cal.5th ___ [pp. 10–11].)

4

relating to a cause of action for death or for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action." (Gov. Code, § 911.2, subd. (a).)

Courts have interpreted Government Code section 911.2, subdivision (a), as applying the six-month presentation deadline to tort claims, and the twelve-month deadline to non-tort claims. (See, e.g., *Voth v. Wasco Public Util. Dist.* (1976) 56 Cal.App.3d 353, 356 (*Voth*) ["statutory language clearly indicates that the [six-month] clause covers tort claims only"].) Whether an action "is contractual or tortious depends upon *the nature of the right sued upon*, and not the form of the pleading or the relief demanded. [Citations.] If the action is based on a breach of a promise, it is contractual; if it is based on a breach of a noncontractual duty, it is in tort. [¶] If the breach is both contractual and tortious, we must ascertain which duty is the quintessence of the action." (*Ibid.*)

In addition to asserting a tort action for fraud, plaintiff alleges two causes of action under the CMIA. As one court recently summarized, the CMIA " 'is intended to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider, while at the same time setting forth limited circumstances in which the release of such information to specified entities or individuals is permissible.' [Citation.] [¶] The CMIA mostly governs disclosures of patient medical information by health care providers, but one chapter governs the use and disclosure of employee medical information by employers. [Citation.] The substantive employer prohibitions—and their relevant exceptions—are found

in the four subdivisions under section 56.20." (*Rossi v. Sequoia Union Elementary School* (2023) 94 Cal.App.5th 974, 986 (*Rossi*).)

Section 56.20, subdivision (b), creates a cause of action for discrimination, while subdivision (c) creates a cause of action for unauthorized use or disclosure of medical information. (*Rossi, supra,* 94 Cal.App.5th at p. 993, fn. 12.) Section 56.20, subdivision (b), provides: "No employee shall be discriminated against in terms or conditions of employment due to that employee's refusal to sign an authorization under this part [for disclosure of medical information]. However, nothing in this section shall prohibit an employer from taking such action as is necessary in the absence of medical information due to an employee's refusal to sign an authorization under this part." (§ 56.20, subd. (b); see *Rossi,* at p. 987.)

Meanwhile, section 56.20, subdivision (c), provides: "No employer shall use, disclose, or knowingly permit its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization under Section 56.11 or Section 56.21 permitting such use or disclosure, except as follows: [¶] (1) The information may be disclosed if the disclosure is compelled by judicial or administrative process or by any other specific provision of law. [¶] (2) That part of the information which is relevant in a lawsuit, arbitration, grievance, or other claim or challenge to which the employer and employee are parties and in which the patient has placed in issue his or her medical history, mental or physical condition, or treatment may be used or disclosed in connection with that proceeding. [¶] (3) The information may be used only for the purpose of administering and maintaining employee benefit plans, including health care plans and plans providing short-term and long-term disability income, workers' compensation

6

and for determining eligibility for paid and unpaid leave from work for medical reasons. [¶] (4) The information may be disclosed to a provider of health care or other health care professional or facility to aid the diagnosis or treatment of the patient, where the patient or other person specified in subdivision (c) of Section 56.21 is unable to authorize the disclosure."

Plaintiff contends the six-month period for presenting a claim under Government Code section 911.2 does not apply to her CMIA claims because they "are not claims for death or personal injury or property" but instead are claims for "a statutory violation." But the mere fact that a claim against a public entity alleges a statutory violation is not determinative. Indeed, as the California Supreme Court has explained, "[u]nder the Government Claims Act . . . there is no common law tort liability for public entities in California; instead, such liability *must be based on statute*." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897, italics added.) Consequently, the question we must focus on is whether the CMIA claims sound in tort. (*Voth*, *supra*, 56 Cal.App.3d at p. 356; see, e.g., *Jones v. Kelly* (1929) 208 Cal. 251, 254–255 [cause of action based on landlord's unexpected and malicious stoppage of water supply to leased premises arose independently of the contract pursuant to the duty imposed under Civil Code section 1708 and sounded in tort].)

Though not dispositive, plaintiff's complaint explicitly recognizes that the CMIA created a tort, alleging: "[T]he California legislature sought to protect every California citizen's individual right to privacy *by creating a tort* under which a defendant can be sued for damages. Specifically, California prohibited employers from punishing their employees for failing to disclose medical information by passing the [CMIA]." (Italics added.) This allegation, however, aligns with authorities recognizing that claims regarding privacy

7

are tort-based. (See, e.g., *Moreno v. Hanford Sentinel, Inc.* (2009) 172 Cal.App.4th 1125, 1129 ["The right to privacy tort was recognized in 1890 based on the trend in tort law to extend protection to ' "the right of determining, ordinarily, to what extent [a person's] thoughts, sentiments, and emotions shall be communicated to others," ' " thereby protecting one's " ' "right 'to be let alone' " ' "]; *McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1160 [claim for disclosure of medical information in violation of the CMIA referred to as an "intentional tort cause of action"].)

Indeed, the CMIA contemplates that a plaintiff must show economic loss or personal injury from a violation of its terms. Here, plaintiff's complaint requested damages pursuant to section 56.35, which provides that "a patient whose medical information has been used or disclosed in violation of Section . . . 56.20 . . . *and who has sustained economic loss or personal injury therefrom* may recover compensatory damages . . . ." (Italics added.) That plaintiff must demonstrate "economic loss or personal injury" to establish a claim under the CMIA supports the applicability of Government Code section 911.2, subdivision (a)'s six-month deadline for "injury to person or property." So does Government Code section 810.8, which, as the trial court noted, defines "injury" as "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person."

Plaintiff's reliance on *Murray v. Oceanside Unified School District* (2000) 79 Cal.App.4th 1338 is misplaced. In *Murray*, the trial court found the plaintiff's sexual orientation discrimination claim barred because it was not based on evidence within "six months before the first government tort claim was filed." (*Murray*, at pp. 1344, 1346.) The Court of Appeal disagreed.

8

*Murray* started by observing that actions brought under the Fair Employment and Housing Act (FEHA) were exempt from the general claims presentation requirements of the Tort Claims Act because FEHA had its own specific time limitations for processing claims, including a one-year period for commencing a civil action, and a one-year period for filing an administrative complaint. (*Murray*, at p. 1360.) Upon determining that then-recent amendments to FEHA operated retroactively to embrace the plaintiff's particular discrimination claim, *Murray* concluded the plaintiff's claim was not barred by the six-month presentation requirement of the Tort Claims Act. (*Murray*, at pp. 1360–1361.) *Murray* is inapposite, as the CMIA does not specify its own time limitations or process for bringing a lawsuit and plaintiff offers no authority placing CMIA claims within FEHA's statutory framework.

Plaintiff's reliance on *Loder v. City of Glendale* (1997) 14 Cal.4th 846 (*Loder*)—apparently as a basis for viewing her CMIA claims as somehow contractual instead of tortious in nature—fares no better. Citing *Loder*, plaintiff essentially posits that the CMIA distinguishes between (a) those seeking to become employees or employees seeking a promotion, and (b) employees whose employers seek to change the terms and conditions of employment by imposing a mandatory drug testing requirement, and that the CMIA's protection of those in category (b) but failure to protect those in category (a) "arises from principles of contract."

Plaintiff, however, fails to provide any pinpoint citations supporting this reading of *Loder*. We have considered the decision and observe that in addressing whether a city's drug testing program violated section 56.20, subdivision (b), of the CMIA, the lead opinion in *Loder* did in fact conclude that "section 56.20, subdivision (b), cannot reasonably be interpreted to regulate the circumstances under which an employer may require job

9

applicants or current employees to submit to a medical examination or drug test." (*Loder*, *supra*, 14 Cal.4th at pp. 862, 865.) But contrary to plaintiff's suggestion, the court did not rely on or even mention contract principles in explaining its holding.

In sum, plaintiff was required to submit her government claims within six months of her termination. Her failure to do so bars her complaint. (See Gov. Code, §§ 911.2, subd. (a), 945.4.)

Before closing, we reiterate that the trial court sustained defendants' demurrer to all causes of action on the alternative and independent ground that plaintiff failed to submit her claims to the hospital *prior* to filing her lawsuit as required by Government Code section 945.4.

Plaintiff's opening brief on appeal did not challenge the trial court's ruling on this point. Though plaintiff belatedly addresses the matter in her reply brief, suggesting it would elevate form over substance to prohibit her from complying with the claim presentation requirement by filing an amended complaint, this argument comes too late. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10.) "As a general rule, points not addressed until a reply brief will not be considered unless good reason is shown for failing to address them earlier." (*Ibid.*) Even under the de novo standard applicable to the review of an order sustaining a demurrer, our review " 'is limited to issues which have been adequately raised and supported in [an appellant's opening] brief.' " (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 155.) Plaintiff fails to show good cause for not raising this issue in her opening brief, and so it is forfeited. Accordingly, the order sustaining the demurrer without leave to amend is properly affirmed on this independent ground.

10

## DISPOSITION

The judgment is affirmed.  Defendant Sonoma Valley Health Care District is entitled to recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____

Fujisaki, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Rodríguez, J.

*Smith v. Sonoma Valley Health Care District* (A168045)