[No. A097487. First Dist., Div. Three. July 3, 2003.]

OPERATING ENGINEERS LOCAL 3 et al., Plaintiffs and Appellants, v. SYLVIA J. JOHNSON, Individually and as Chief Probation Officer, etc., et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I., II., and sections A., B., and C. of part III.

182

## Counsel

Weinberg, Roger & Rosenfeld, Vincent A. Harrington, Jr., and Anne I. Yen for Plaintiffs and Appellants.

Patton, Wolan, Boxer, Steven C. Wolan, Robert D. Reiter, Andrea S. Carlise and Mary Ellyn Gormley for Defendants and Appellants.

OPINION

**POLLAK, J.**—Plaintiffs Bonita Vinson and her bargaining representative, Operating Engineers Local 3, affiliated with the International Union of Operating Engineers, AFL-CIO (Local 3) brought this action against Sylvia J. Johnson, individually and in her capacity as the Chief Probation Officer of the County of Alameda, and against the County of Alameda. In the unpublished portion of this opinion we reject the contentions presented by plaintiffs' appeal from the judgment denying them the full measure of relief they requested under various causes of action. In the published portion of the opinion, we address an issue raised by defendants' cross-appeal, and affirm the judgment awarding Vinson damages against her employer for the invasion of her constitutionally protected right of privacy. We reject the contention that this claim is barred by the exclusivity provisions of the Workers' Compensation Act (Lab. Code, § 3600 et seq.).

I.–II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.   DISCUSSION

A.–C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

D.   *The trial court correctly ruled that workers' compensation is not the exclusive remedy for the breach of Vinson's constitutional right of privacy.*

Defendants have cross-appealed from the judgment insofar as it awarded Vinson damages for the invasion of her constitutional right of privacy. Vinson claimed, and the jury found, that Johnson violated Vinson's right to privacy by announcing at a March 17, 1999 managerial meeting, in the presence of numerous other employees with no interest in the matter, that Vinson would be reprimanded and directing her to write her own letter of reprimand, and by then distributing to a much larger number of additional employees the minutes of the meeting, in which this disciplinary action was reported in bold print. There was substantial evidence that these disclosures violated explicit departmental policy concerning the confidentiality of such personnel matters.

---

*See footnote, *ante,* page 180.

Vinson's fourth cause of action alleged that as the result of this invasion of her privacy interests, "she was subject to embarrassment, shame, became an object of ridicule, and suffered extreme emotional distress and upset." Based on the evidence, the jury awarded Vinson $10,000 for the harm to her interest in privacy resulting from each of the two invasions and for the mental distress which they caused. Defendants' pretrial motion for judgment on the pleadings, based on the contention that workers' compensation provides the exclusive remedy for this claim, was denied in the law and motion department and this ruling was reaffirmed by the trial judge after the verdict had been returned.

"Labor Code section 3600, subdivision (a), [fn. omitted] provides that, subject to certain particular exceptions and conditions, workers' compensation liability 'in lieu of any other liability whatsoever' will exist 'against an employer for any injury sustained by his or her employees arising out of and in the course of the employment.' ... [T]he basis for the exclusivity rule in workers' compensation law is the 'presumed "compensation bargain," pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' (*Shoemaker* [*v. Myers* (1990) 52 Cal.3d 1 at p. 16 [276 Cal.Rptr. 303, 801 P.2d 1054]].) [¶] [The Supreme Court] recognized in *Shoemaker* and elsewhere, however, that certain types of injurious employer misconduct remain outside this bargain. There are some instances in which, although the injury arose in the course of employment, the employer engaging in that conduct ' "stepped out of [its] proper role[]" ' or engaged in conduct of ' "questionable relationship to the employment." ' [Citations.]" (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 708 [30 Cal.Rptr.2d 18, 872 P.2d 559] (*Fermino*), quoting *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 161 [233 Cal.Rptr. 308, 729 P.2d 743] (*Cole*).)

Thus, a two-step analysis normally is required to determine whether a claim is within the exclusive jurisdiction of the Workers' Compensation Appeals Board (WCAB). The court must "initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions." (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 811 [102 Cal.Rptr.2d 562, 14 P.3d 234] (*Vacanti*).) The "starting point of ... analysis is the alleged injury underlying plaintiffs' claims." (*Id.* at p. 812.) While section 3600 enumerates a list of "conditions of compensation" that must concur, the first step normally entails simply determining whether the plaintiff is seeking to recover for "industrial personal injury or death" (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054] (*Shoemaker*)), i.e., for personal injury or death sustained in and arising

out of the course and scope of employment. (*Ibid.*; *Vacanti,* 24 Cal.4th at pp. 812–814; *Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 752–753 [7 Cal.Rptr.2d 808, 828 P.2d 1195] (*Livitsanos*).)[2] If the plaintiff's claim comes within the conditions of compensation—i.e., if it is a claim for personal injury or death arising out of the course and scope of employment—one reaches the second step in the exclusivity analysis, which is to determine whether the acts or motives giving rise to the injury constitute " 'a risk reasonably encompassed within the compensation bargain.' (*Shoemaker, supra,* 52 Cal.3d at p. 16.)" (*Vacanti, supra,* 24 Cal.4th at pp. 819–820.)

The sole decision cited by the trial court in denying defendants' motion here was *Davaris v. Cubaleski* (1993) 12 Cal.App.4th 1583 [16 Cal.Rptr.2d 330], in which the Court of Appeal agreed with an earlier Court of Appeal decision in *Howland v. Balma* (1983) 143 Cal.App.3d 899 [192 Cal.Rptr. 286] (*Howland*) that a cause of action for defamation arising out of the course of employment is not barred by the exclusivity provision of the Workers' Compensation Act. As pointed out by the court in *Davaris v. Cubaleski*, the Supreme Court in *Livitsanos* had expressly declined to decide this issue, but had observed that " '[a] number of courts have apparently determined that the gravamen of an action for libel or slander is damage to "reputation," a "proprietary" as distinct from a physical or mental injury, and therefore have concluded that defamation does not lie within the purview of the workers' compensation law.' " (*Davaris, supra,* at p. 1590, quoting *Livitsanos, supra,* 2 Cal.4th at p. 757, fn. 9.) ■ In *Shoemaker,* which was decided before *Livitsanos,* the Supreme Court itself had cited *Howland* to indicate that workers' compensation is not the exclusive remedy for workplace defamation, in support of the broader proposition that the exclusive remedy provisions apply only in cases of industrial personal injury or death. (*Shoemaker, supra,* 52 Cal.3d at p. 16.) More recently, in *Vacanti,* the Supreme Court reiterated that "courts have exempted defamation claims from exclusivity because an injury to reputation does not depend on a personal injury." (*Vacanti, supra,* 24 Cal.4th at p. 814, citing *Howland, supra,* at p. 904.) Thus, while the Supreme Court has not yet explicitly passed on this

---

[2] As illustrated in *Vacanti,* the injury may also be "collateral to or derivative of" a personal injury arising out of the course of employment, such as injuries arising out of the workers' compensation claims process. (*Vacanti, supra,* 24 Cal.4th at p. 812.) *Vacanti* also points out that the injury must be one that causes a " 'disability or the need for medical treatment.' [Citation.]" (*Id.* at p. 814.)

■ There are also several statutory exceptions that sometimes must be considered. The exceptions appear in Labor Code sections 3602 (injuries caused by willful physical assault by the employer, injuries aggravated by the employer's fraudulent concealment, and injuries caused by a defective product manufactured by the employer but procured from an independent third person), 3706 (injuries in the course of employment for an employer who fails to secure the payment of compensation in the manner prescribed by statute) and 4558 (injuries caused by the employer's knowing removal of, or failure to install, a point of operation guard on a power press).

question, its opinions to date and the decisions of the Courts of Appeal all indicate that the Workers' Compensation Act does not preclude a civil action for defamation against one's employer—but for a reason that does not extend to claims for the invasion of privacy. A claim for defamation does not satisfy the conditions of compensation because it is not considered to be based on a personal injury.

■ In contrast, "[t]he gist of the cause of action in a privacy case is not injury to the character or reputation, but a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community. [Citations.] The right of privacy concerns one's own peace of mind, while the right of freedom from defamation concerns primarily one's reputation." (*Fairfield v. American Photocopy Equipment Co.* (1955) 138 Cal.App.2d 82, 86 [291 P.2d 194].)  ■  The decision in *Howland* was based on this distinction and on the premise that the " 'key to whether the Workmen's Compensation Act precludes a common law right of action lies in the nature of the injury for which plaintiff makes claim, not the nature of defendant's act which plaintiff alleges to have been responsible for the injury.' " (*Howland, supra,* 143 Cal.App.3d at p. 904.)[3] ■ The elements of emotional distress damages arising from a breach of privacy are "anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, anguish, etc." (*Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1485 [232 Cal.Rptr. 668]), precisely the harm that Vinson claimed and on which the jury was instructed.[4] Thus, unlike the damage to one's reputation caused by defamation, the nature of the harm from the breach of the right to privacy does constitute a personal injury, bringing such a claim within the conditions of compensation and satisfying the first step of the exclusivity analysis. (*Livitsanos, supra,* 2 Cal.4th at pp. 753–754.)

While an invasion of privacy claim may not be analogous to a defamation claim for this purpose, Vinson's claim may nonetheless avoid the exclusivity provisions of the Workers' Compensation Act under the second step of the

---

[3] The *Howland* court reaffirmed that the gist of an action for defamation is damage to reputation, and that "[t]he harm flowing therefrom is not a 'personal injury' (i.e., medical or physical injury to the body) or a risk of employment within the purview of workers' compensation law. [Citations.] 'In fact, an injury to reputation affects a proprietary interest and as such is not a personal injury at all, any concomitant physical or mental injury notwithstanding.' " (*Howland, supra,* 143 Cal.App.3d at p. 904.)

[4] *Miller v. National Broadcasting Co., supra,* 187 Cal.App.3d at page 1482 discusses the four basic privacy interests that have been recognized, and itself involved a claim for intrusion upon the plaintiff's seclusion or solitude. The present case fits within the distinct category of the public disclosure of embarrassing private facts about plaintiff. ■ Nonetheless, the nature and measure of damages is the same for either type of claim.

analysis. As pointed out above, "the exclusive remedy provisions are not applicable under certain circumstances, sometimes variously identified as 'conduct where the employer or insurer stepped out of their proper roles' [citations], or 'conduct of an employer having a "questionable relationship to the employment" [citations], but which may be essentially defined as not stemming from a risk reasonably encompassed within the compensation bargain." (*Shoemaker, supra,* 52 Cal.3d at p. 16.) In *Vacanti,* the Supreme Court most recently observed that the courts have long "struggled to define the contours of this exception to workers' compensation exclusivity." (*Vacanti, supra,* 24 Cal.4th at p. 820.) "When determining whether the exception applies to a cause of action, courts first determine whether the alleged acts that give rise to that cause of action are 'of the kind that [are] within the compensation bargain.' [Citation.] In making this determination, courts may consider only those acts that relate to an element of the cause of action. Where those acts are 'a normal part of the employment relationship' [citation] ..., the cause of action is subject to exclusivity. Otherwise it is not." (*Ibid.*)

"In addition to the acts themselves, the motive element of a cause of action may insulate that cause of action from the purview of the exclusive remedy provisions. This exception to exclusivity, however, is quite limited. '[A]ny inquiry into an employer's motivation is undertaken not to determine whether the employer intentionally or knowingly injured the employee, but rather to ascertain whether the employer's conduct violated public policy and therefore fell outside the compensation bargain.' [Citation.] In other words, the motive element of a cause of action excepts that cause of action from exclusivity *only if* it violates a fundamental public policy of this state. [Citation.] Thus, we have refused to bar both statutory and tort claims where their motive element violates such a policy. [Citations.]" (*Vacanti, supra,* 24 Cal.4th at p. 823, italics in original.)

In *Cole,* the Supreme Court held that an employer's intentional misconduct—there, alleged harassment by a superior—is not necessarily outside the employment bargain, so that ordinarily workers' compensation is the exclusive remedy for the intentional infliction of emotional distress. The acts of misconduct alleged there "reflect matters which can be expected to occur with substantial frequency in the working environment. Some harassment by superiors when there is a clash of personality or values is not uncommon. Disciplinary hearings and demotions and friction in negotiations as to grievances are also an inherent part of the employment setting ...." (*Cole, supra,* 43 Cal.3d at p. 161.)[5]

---

[5] Although the plaintiff in *Cole* alleged physical as well as emotional injury, in *Livitsanos, supra,* 2 Cal.4th 744, 756 [7 Cal.Rptr.2d 808, 828 P.2d 1195], the Supreme Court overruled the prior law established by *Renteria v. County of Orange* (1978) 82 Cal.App.3d 833 [147 Cal.Rptr. 447], and held that workers' compensation is normally the exclusive remedy for such

In *Livitsanos*, however, the Supreme Court remanded a cause of action for the intentional infliction of emotional distress, and a claim for defamation, for further consideration of whether the employer's misconduct alleged there—"a campaign of outrageous and harassing conduct, which included falsely claiming that plaintiff embezzled money" from his employer, and economic coercion—exceeded the normal risks of the employment relationship. (*Livitsanos, supra*, 2 Cal.4th at p. 756.) Similarly, in *Fermino*, the plaintiff's cause of action for false imprisonment against her employer for detaining her while investigating an alleged theft was maintainable because such conduct was deemed to "violate the employee's reasonable expectations and transgress the limits of the compensation bargain." (*Fermino, supra*, 7 Cal.4th at p. 723, fn. 7.) The Supreme Court there recognized "the right of an employer to reasonably detain an employee suspected of theft, and indeed to discharge an employee—consistent with the employee's contractual or other employment rights—if he or she refuses to cooperate with a reasonable investigation. But the question whether [employer's] actions were reasonable, justifiable, or privileged goes to the factual question *whether* its actions constituted false imprisonment .... Once it is determined, however, that a false imprisonment has indeed taken place, then such action cannot be said to be a normal aspect of the employment relationship, however legitimate its initial justification, any more than an assault on an employee can be brought within the scope of the exclusivity rule by claiming it was motivated by the need for employee discipline." (*Id.* at p. 723, fn. omitted.)

In our view, it is a close question whether the invasion of Vinson's privacy that was alleged and proven here may be considered "a normal part of the employment relationship."[6] On one hand, reprimands undoubtedly are "typical employer actions 'such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances' [and] do not, by themselves exempt a cause of action from exclusivity." (*Vacanti, supra*, 24 Cal.4th at p. 821, citing *Cole, supra*, 43 Cal.3d at p. 160.) This remains true even if in imposing discipline tempers flare and the employer engages in conduct rising to the level of intentional infliction of emotional distress. (E.g.,

---

intentional employer misconduct even when the employee's only injury is emotional. "So long as the basic conditions of compensation are otherwise satisfied (Lab. Code, § 3600), and the employer's conduct neither contravenes fundamental public policy (*Tameny v. Atlantic Richfield Co.* [(1980)] 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]) nor exceeds the risks inherent in the employment relationship (*Cole, supra*, 43 Cal.3d 148), an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." (*Livitsanos, supra*, 2 Cal.4th at p. 754.)

[6] We emphasize that defendants do not dispute that the intentional disclosure of Vinson's reprimand to coemployees with no need to know is sufficient to constitute a violation of the constitutional right to privacy, nor do they challenge the sufficiency of the evidence to establish these facts.

*Cole, supra,* at p. 160.) And it is certainly predictable that knowledge, or at least rumors, that an employee has been disciplined will circulate among fellow employees.

Yet, while reprimands and their aftermath may in most circumstances be a normal part of the employment relationship, that is not to say that the intentional dissemination of this information to other employees who have no reason to know of it may not in extreme circumstances exceed the known and inherent risks of the workplace. Defendant's conduct here is subject to the same analysis undertaken in *Fermino.* There, the court pointed out that "a 'reasonable' false imprisonment is oxymoronic. False imprisonment is, by definition, an unreasonable and indeed criminal confinement. [Citation.] ... When an employer forcibly and criminally deprives an employee of her liberty, even as a means to otherwise legitimate ends, it steps outside its 'proper role' ...." (*Fermino, supra,* 7 Cal.4th at pp. 721–722.) ■ So too here, the invasion of Vinson's constitutional right of privacy by definition necessarily involved conduct that went beyond "broadly based and widely accepted community norms" of acceptable employer conduct. As the trial court instructed the jury, Vinson was entitled to recover only if she had "a reasonable expectation of privacy as to the interests invaded" and defendants' conduct "constitute[d] an egregious breach of the social norms underlying the privacy right."[7] The jury found that defendants' conduct crossed this high threshold, and defendants have not challenged the sufficiency of the evidence to support this finding. ■ While defendants' conduct was not criminal, as was the false imprisonment alleged in *Fermino,* the conduct violated a right conferred by the California Constitution and thus was contrary to a fundamental public policy. The violation of such a clearly articulated public policy reinforces the basis for holding defendants' conduct to exceed what may be considered normal employer behavior within the compensation bargain. (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1097–1101 [4 Cal.Rptr.2d 874, 824 P.2d 680] (*Gantt*), overruled on another ground in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046]; *Vacanti, supra,* 24 Cal.4th at p. 823.) "In

---

[7] The jury was instructed in accordance with BAJI No. 7.25.1 as follows: "The plaintiff Bonita Vinson also seeks to recover damages based upon a claim of a violation of plaintiff's California Constitutional right to privacy. [¶] The essential elements of such claim are: [¶] 1. The defendant engaged in conduct which invaded plaintiff's privacy interests; [¶] 2. Plaintiff had a reasonable expectation of privacy as to the interests invaded; [¶] 3. The invasion of privacy was serious; [¶] 4. Such serious invasion of privacy caused plaintiff to suffer injury, damage, loss or harm. [¶] A reasonable expectation of privacy is an objective entitlement founded upon broadly based and widely accepted community norms. Such determination must be relative to the customs of the time and place, the occupation of the plaintiff, and the habits of his or her neighbors or fellow citizens, and the extent to which the plaintiff voluntarily consented or participated in activities impacting privacy interests. [¶] An invasion of a privacy interest must be serious, that is, the invasion must constitute an egregious breach of the social norms underlying the privacy right."

*Gantt*, we [the Supreme Court] reaffirmed *Shoemaker*[, *supra*, 52 Cal.3d 1] and extended its holding to a case involving a common law wrongful discharge cause of action. We concluded that 'the ... "compensation bargain" cannot encompass conduct, such as sexual or racial discrimination, "obnoxious to the interests of the state and contrary to public policy and sound morality." ' " (*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1155 [77 Cal.Rptr.2d 445, 959 P.2d 752].)[8]

This analysis leads to the conclusion that the trial court correctly held that Vinson's claim for the invasion of her constitutional right to privacy was not precluded by the exclusivity provision of the Workers' Compensation Act. We acknowledge some discomfort with this conclusion. A disciplined employee may allege the invasion of his or her privacy almost as easily as one may allege the intentional infliction of emotional distress. While an employee establishing such a claim is entitled under our view to pursue the cause of action in superior court, if the claim is rejected it follows that the matter should never have been in superior court in the first place. It is hardly desirable to have the jurisdictional determination dependent on the outcome of the case on its merits. Where the employee does not prevail at trial, the employer will nonetheless have lost the benefit of the "compensation bargain" because the employer already will have been put to the burden of defending a claim that should have been before the WCAB. Ultimately, this consequence may be attributable to the difficulty, if not the inherent impossibility, of adopting a bright-line test to distinguish between a normal and abnormal "part of the employment relationship." As the preceding discussion makes clear, our Supreme Court has steadfastly rejected any such bright-line approach. (E.g., *Vacanti*, *supra*, 24 Cal.4th at pp. 819–820, 823; *Fermino*, *supra*, 7 Cal.4th at p. 708; *Livitsanos*, *supra*, 2 Cal.4th at p. 754; *Gantt*, *supra*, 1 Cal.4th at p. 1100; *Shoemaker*, *supra*, 52 Cal.3d at p. 16; *Cole*, *supra*, 43 Cal.3d at p. 161.)

---

[8] In *Luck v. Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 26–29 [267 Cal.Rptr. 618], the Court of Appeal held that an employee's termination for refusal to submit to urinalysis as an exercise of the employee's constitutional right to privacy did not support a cause of action for wrongful termination in violation of public policy because exercise of the constitutional right did not inure to the benefit of the public. "The right to privacy is, by its very name, a private right, not a public one." (*Id.* at p. 28.) Since the parties could have lawfully agreed that the employee would submit to urinalysis without violating any public interest, "there was no violation of *public* policy" in terminating the employee for the refusal to so agree. (*Ibid.*) By extension, *Luck* may stand for the proposition that defendants properly could have terminated Vinson for refusing to agree to the dissemination of the disciplinary action against her, but the case does not suggest that defendants were free to disregard Vinson's privacy rights without her consent, or that such unilateral action was part of the normal employment relationship.

In this case defendants never disputed the sufficiency of the conduct that Vinson alleged and the jury found to constitute a violation of the constitutional right of privacy. There is no basis to assume that every time a coemployee learns of discipline imposed on another employee, there will be a violation of the constitutional right of privacy. By critically evaluating the sufficiency of complaints asserting such a violation, trial courts should be able to reject at the pleading stage most complaints that attempt to circumvent the exclusivity of the workers' compensation scheme by frivolously alleging an invasion of this right. However, the merit of Vinson's claim has been established, and she is entitled to recover for the invasion of her constitutionally protected right.

## IV. DISPOSITION

The judgment is affirmed. The parties shall bear their respective costs on appeal.

McGuiness, P. J., and Corrigan, J., concurred.